1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  RACHEL L. JENSEN (211456)
   655 West Broadway, Suite 1900
3  San Diego, CA 92101
   Telephone: 619/231-1058
4  619/231-7423 (fax)
   rachelj@rgrdlaw.com
5
   Attorneys for Plaintiffs and the Proposed Class
6
   [Additional counsel appear on signature page.]
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                 SOUTHERN DIVISION

11  STEVEN D. STRAND, NATHAN          )  **VIA FAX**
    MONTIJO and MORGAN BENGGIO,       )
12  Individually and on Behalf of All Others )  Case No.  **SACV 12 - 02232 DOC (JPRx)**
    Similarly Situated,               )
13                                     )  CLASS ACTION
                      Plaintiffs,      )
14                                     )  COMPLAINT
           vs.                        )
15                                     )
    FORD MOTOR COMPANY and DOES )
16  1-50, inclusive,                  )
                                       )
17                  Defendants.        )  DEMAND FOR JURY TRIAL
                                       )
18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Nathan Montijo, Steven D. Strand and Morgan Benggio ("Plaintiffs"), by and through their attorneys, bring this class action on behalf of themselves and on behalf of all others similarly situated, including all persons who purchased and/or acquired certain Ford models, against the herein named defendants Ford Motor Company and Doe Defendants 1-50 (collectively "Defendants"). Plaintiffs bring this action for compensatory damages and equitable, injunctive and declaratory relief against Defendants, who designed, manufactured, marketed, sold and/or distributed these Ford models. Plaintiffs allege the following upon their own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of counsel.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1) as modified by the Class Action Fairness Act of 2005, because the Plaintiffs herein and the Defendants herein are citizens of different states, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys' fees, interest, and costs.

2.     Pursuant to 28 U.S.C. §1391(b), venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants market and distribute their hybrid vehicles in this District.

## NATURE OF THE ACTION

3.     This is a consumer class action brought on behalf of Plaintiffs and all others similarly situated who purchased or leased certain Ford vehicles, as described in more detail below (the "Class"). Upon information and belief, thousands of these vehicles were distributed in the United States and marketed and sold based on misrepresentations and omissions concerning the vehicles' Miles Per Gallon Gasoline Equivalent ("MPGE") and Fuel Economy Rating ("FER"), including as displayed on the window stickers affixed to each vehicle. In addition to the misrepresentations affixed on each window sticker, Defendants, through an extensive, nationwide

marketing and advertising campaign, touted their vehicles' fuel efficiency mantra and their desire to be "green." Through their false advertising, Defendants have sold thousands of vehicles that were subject to misrepresentations about the MPGE and FER of their vehicles.

4. The timing of Defendants' actions and/or omissions is not a coincidence. FER and MPGE are more important than ever to consumers in this country. Defendants are aware that fuel costs are skyrocketing, and consumers are looking for ways to burn less fuel and reduce their carbon footprint. Defendants capitalized on this consumer trend and continued to sell and lease vehicles which misrepresented the vehicles' MPGE and FER.

5. Recently, *Consumer Reports* performed independent testing and determined that the data Defendants touted about MPG and FER was inaccurate. This is not conduct exclusive to Ford. In fact, on November 2, 2012, Hyundai and Kia announced to the consuming public that they would lower their fuel economy ratings for models which were sold from 2010 through October 31, 2012.[1]

6. Upon information and belief, the Ford hybrid vehicle models which misrepresent the MPGE and FER information are referred to herein as the "Hybrid Vehicles" and include:

**Ford Hybrid Vehicles**

(a)    2010-2013 Ford Fusion Hybrid SE (the "Fusion"); and

(b)    2012-2013 Ford C-Max SE (the "C-Max").

7. In addition to the Hybrid Vehicles enumerated above, upon information and belief, Ford sold and/or leased other vehicles that were advertised with false MPGE and FER information and bore stickers with false MPGE and FER

---

[1]    http://www.hyundainews.com/us/en-us/Media/PressRelease.aspx?mediaid=37747&title=hyundai-and-Kia-initiate-voluntary-program-to-adjust-fuel-economy-ratings-on-select-vehicles (last visited Dec. 28, 2012).

1   information, including, for example, the 2011 Ford Fusion, which plaintiff Morgan

2   Benggio purchased. These vehicles are referred to herein as the "Affected Vehicles."

3   Collectively, the "Hybrid Vehicles" and the "Affected Vehicles" are collectively

4   referred to herein as the "Vehicles."

5       8.      Defendants' misrepresentations concerning the MPGE and FER of these

6   Vehicles were misleading, false, and reasonably likely to deceive and did in fact

7   deceive Plaintiffs and other members of the Class.

8       9.      In conjunction with each sale or lease to Plaintiffs and the Class,

9   Defendants warranted the MPGE and FER of their Vehicles.

10      10.     As a result of Defendants' misrepresentations directly related to MPGE

11  and FER, Plaintiffs and the Class have suffered damages, in that they purchased

12  and/or leased Vehicles that they would not have otherwise purchased and/or leased

13  had they known of the MPGE and FER misrepresentations. Alternatively, Plaintiffs

14  and the Class would not have paid as much for these Vehicles. Further, they have

15  suffered damages due to the diminution of value for their Vehicles.

16                                   **PARTIES**

17      11.     Plaintiff Steven D. Strand ("Strand") is a resident of Placentia, California.

18  Plaintiff Strand acquired from his father's estate a 2012 Ford, which has not gotten the

19  MPGE or FER advertised for the vehicle. As a result of the misrepresentations,

20  Strand has also suffered damages in the diminution of the value of his Ford car.

21      12.     Plaintiff Nathan Montijo ("Montijo") is a resident of La Puente,

22  California. Plaintiff Montijo purchased a 2013 Ford C-Max at the Santa Monica Ford

23  dealership. The C-Max was advertised as getting approximately 47 MPGE, but has

24  not performed as advertised.    Had Montijo been aware of Defendants'

25  misrepresentations concerning the MPGE and FER of the 2013 Ford C-Max, he would

26  not have purchased the vehicle or would not have paid as much for the vehicle. As a

27  result of the misrepresentations, Montijo has also suffered damages in the diminution

28  of the value of his Ford car.

13.     Plaintiff Morgan Benggio ("Benggio") is a resident of Staten Island, New York, where he attends college. Plaintiff Benggio purchased a 2011 Ford Fusion from Journey Ford Lincoln in Novato, California, while stationed in nearby Sausalito. The Ford Fusion has not gotten the MPGE or FER advertised for the vehicle. Had Benggio been aware of Defendants' misrepresentations concerning the MPGE and FER of the Ford Fusion, he would not have purchased the vehicle or would not have paid as much for the vehicle. As a result of the misrepresentations, Benggio has also suffered damages in the diminution of the value of his Ford car.

14.     Defendant Ford Motor Company ("Defendant Ford" or "Ford") maintains its World Headquarters at One American Road, Dearborn, Michigan 48126. Ford is an American multinational manufacturer of automobiles, is the second-largest U.S.-based automaker, and is the world's fifth-largest automobile manufacturer. Ford operates 90 plants around the world and employs over 200,000 employees. Ford distributes its vehicles throughout the United States via Ford dealerships, including in California. Ford also operates a research lab in Silicon Valley, California.[2] Ford is publicly traded on the New York Stock Exchange.

15.     Doe Defendants 1-50 (the "Doe Defendants") are individuals and/or entities that may be responsible for the design, testing and marketing of Defendants' Vehicles. The identities of Doe Defendants 1-50 are currently unknown, but may be discovered upon further investigation and discovery.

16.     Defendant Ford and the Doe Defendants 1-50 are referred to herein collectively as "Defendants."

---

[2]     http://corporate.ford.com/news-center/press-releases-detail/pr-fords-new-silicon-valley-36681 (last visited Dec. 28, 2012)

## SUBSTANTIVE ALLEGATIONS

**Rise in Sales of Fuel-Efficient Vehicles in the United States**

17.     It is widely known that some of the hottest cars on the market these days are fuel efficient vehicles that save consumers money at the pump, where they have seen prices soar over the past several years.  In fact, *The New York Times* published an article this fall observing: "In the past, nothing slowed down strong car sales faster than a spike in gasoline prices.  But these days, consumers simply switch to more fuel-efficient models."[3]

18.     Consumers are also increasingly mindful of their carbon footprint in light of popular education concerning climate change.  Buying a fuel-efficient car is one of the ways in which consumers are encouraged to make a difference in reducing climate change.

19.     In the summer of 2012, media articles reported that Kelley Blue Book ("KBB") had seen "an increased interest in fuel-sipping small cars both in terms of KBB.com shopping activity and retail sales volume."[4]  Sales for some fuel-efficient cars were up nearly 50% from a year before.

20.     More recently, in October 2012, *The New York Times* reported that automobile sales were at their highest point in four years.[5]  The robust sales pace was driven in part by the "wide variety of new fuel-efficient models on the market."  The article quoted a Ford executive as stating: "'Fuel economy remains one of the most important features customers want today.'"

---

[3]     http://www.nytimes.com/2012/09/05/business/august-us-car-sales.html  (last visited Dec. 28, 2012).

[4]     http://business.time.com/2012/08/27/yet-again-high-gas-prices-boost-sales-of-small-fuel-efficient-cars/ (last visited on Dec. 28, 2012).

[5]     http://www.nytimes.com/2012/10/03/business/g-m-and-ford-post-lackluster-sales.html (last visited Dec. 28, 2012).

- 5 -

21. Additionally, a study conducted by *Consumer Reports* revealed that consumers are willing to pay extra for a fuel-efficient vehicle in order to cut driving costs, increase fuel economy, and further environmental protection goals.   In fact 83% of consumers surveyed reported that they would be willing to pay more for a fuel-efficient car.[6]

22. Indeed, in an article published on October 16, 2012, *Forbes* stated that "[w]ith gas prices touching $5 a gallon in some parts of the country, the emphasis on fuel efficiency of vehicles has never been higher."[7]

**Defendants Bank on Consumer Interest in Fuel
Economy with Misleading Advertising**

23. Consistent with the trends in consumer interest regarding fuel-efficient cars, Defendant Ford has attempted to portray its vehicles as fuel efficient.  Through this comprehensive and deceptive marketing campaign, Defendant Ford has conveyed these messages to the consuming public in the United States about the MPGE and FRE of its vehicles.

24. In fact, in a recent press release, Ford admits that fuel economy has become an even more key purchase consideration for consumers and that Ford is investing billions to research and develop fuel efficient vehicles.[8]

25. Moreover, in an attempt to target the growing demand for hybrid vehicles, a market previously dominated by Toyota Motors, Ford introduced the C-Max and Fusion Vehicles.[9]

---

[6]     http://news.consumerreports.org/cars/2011/11/survey-car-owners-want-better-fuel-economy-support-increased-standards.html (last visited Dec. 28, 2012).

[7]     http://www.forbes.com/sites/greatspeculations/2012/10/16/how-ford-plans-to-benefit-from-high-gas-prices/ (last visited Dec. 28, 2012).

[8]     http://media.ford.com/mini_sites/10031/fueleconomy/ (last visited Dec. 28, 2012).

[9]     http://www.forbes.com/sites/greatspeculations/2012/10/16/how-ford-plans-to-benefit-from-high-gas-prices/ (last visited Dec. 28, 2012).

26.     To be sure, Ford issued press releases on both the Fusion and the C Max, touting their fuel efficiency.   On September 18, 2012, Ford touted the Fusion as "Americas Most Fuel Effecent Midsize Sedan."[10]   In July and August, 2012, Ford boasted that the C-Max raises the bar for hybrid fuel economy and takes customers further that the Toyota Prius, a popular hybrid model.[11]

27.     In fact, Defendants' deceptive marketing starts even before consumers walk into a dealership to view the vehicles.  For instance, Ford aired commercials in which they claimed their C-Max Hybrid obtains better MPGE than Toyota.[12]

28.     Indeed, Ford regularly compared the mileage of the C-Max to that of the Toyota Prius.  In fact, Ford focused a large part of its fall 2012 C-Max marketing campaign on a comparison of these two vehicles.

29.     On its website, Ford advertises the various Ford models and includes the MPGE and FER for each Vehicle.[13]  This information is also publicized, *inter alia*, at the dealerships on stickers affixed to the windows of the Vehicles.

30.     As further proof that that Ford is not telling the truth about its fuel efficiency information is the fact that the U.S. Environmental Protection Agency ("EPA") posted the 2013 Ford Fusion fuel economy numbers and then quickly removed them from the website.[14]

---

[10]     http://media.ford.com/article_display.cfm?article_id=37109 (last visited Dec. 28, 2012).

[11]     http://media.ford.com/article_display.cfm?article_id=36932, http://media.ford.com/article_display.cfm?article_id=36816 (last visited Dec. 28, 2012).

[12]     http://www.youtube.com/watch?feature=fvwp&v=wZCkqqmigZ0&NR=1 (last visited Dec. 28, 2012).

[13]     http://www.ford.com/ (last visited Dec. 28, 2012).

[14]     http://www.autoblog.com/2012/09/07/2013-ford-fusion-rated-at-25-37-mpg-hybrid-gets-47-mpg/ (last visited Dec. 28, 2012).

31.   Finally, at Defendants' dealerships, the vehicle window stickers do the rest:



32.   These stickers are attached to all vehicle windows and conspicuously convey the publicized FERs directly next to the suggested retail price of the vehicle. And why wouldn't they? As stated previously, gas prices over the last few years have continued to increase and vehicles with better MPGE and FER have greater market value than ever.

*Consumer Reports* **Discovers the Falsity of Ford's Claims**

33.     On December 6, 2012, *Consumer Reports* issued a report stating that recent tests showed that the Fusion and C-Max hybrid vehicles do not live up to Ford's claims regarding their fuel economy.  After running both vehicles through "real-world tests," *Consumer Reports* found that each vehicle had actual MPGE's far below those repeatedly touted by Ford.[15]

34.     *Consumer Reports* revealed that Defendants overstated the fuel economy of the C-Max and Fusion "by a whopping 10 and 8 mpg, respectively, or about 20 percent."[16]

35.     The test found that the Fusion delivered 39 MPGE overall, while the C-Max delivered 37 MPGE.[17]  This is a far cry from the 47 MPGE advertised by Defendants.

36.     In fact, the article stated that the Vehicles had the largest discrepancy between their overall results and the estimates published that *Consumer Reports* had seen among any current models.[18]

37.     *Consumer Reports* concluded that their tests showed that "buyers shouldn't expect the stellar 47 mpg that Ford is promoting" and that "'[m]ost buyers won't get anything near 47 mpg in the real world.'"[19]

38.     Raj Nair, Ford's Global Product Development Chief, responded to the severe discrepancy between the advertised MPGEs and those found by *Consumer*

---

[15]     http://news.consumerreports.org/cars/2012/12/video-tests-show-2013-ford-fusion-c-max-hybrids-dont-live-up-to-47-mpg-claims.html (last visited Dec. 28, 2012).

[16]     *Id.*

[17]     *Id.*

[18]     *Id.*

[19]     *Id.*

1  *Reports*, claiming that there are a variety of factors that could lead to varying results.

2  However, Nair admitted that when driving the Vehicles the usual way they are driven,

3  the Vehicles lose approximately 12 MPGE, giving credence to *Consumer Reports'*

4  results.[20]

**Plaintiffs and the Class Were Harmed
by Defendants' False Advertisements**

39.  As previously mentioned, with the rising costs of fuel and the desire to
burn less of it, efficiency and consumption are more important than ever to Plaintiffs
and Class members in deciding which vehicle to purchase or lease.  Indeed, Gina
McCarthy, Assistant Administrator for the EPA's Office of Air and Radiation has
stated: "Consumers rely on the window sticker to help make informed choices about
the cars they buy."  Such information includes the MPGE and FER for the vehicle
listed on the window sticker.

40.  Defendants based a large part of their marketing campaign of the
Vehicles on the fuel efficiency of the Vehicles.

41.  To the detriment of Plaintiffs and the Class, Defendants' marketing
campaign concerning the fuel efficiencies of the Vehicles succeeded, and Plaintiffs
and other Class members relied on the false advertisements concerning Defendants'
Vehicles' fuel efficiency.

## CLASS ACTION ALLEGATIONS

42.  Plaintiffs bring this action as a class action pursuant to Federal Rule of
Civil Procedure 23(a) and (b) on behalf of themselves and all others similarly situated
as members of the following class: All persons in the United States who purchased
and/or leased one of the Vehicles (the "Class").  Specifically excluded from the
proposed Class are Defendants, their officers, directors, agents, trustees, parents,

---

[20]    http://search.autonews.com/v/68276790/ford-s-take-on-mpg-gap-12-14-12.htm
(last visited Dec. 28, 2012)

1  children, corporations, trusts, representatives, employees, principals, servants,

2  partners, joint ventures, or entities controlled by Defendants, and their heirs,

3  successors, assigns, or other persons or entities related to or affiliated with Defendants

4  and/or their officers and/or directors, or any of them; any Judge assigned to this

5  action, and any member of their immediate family. Subject to additional information

6  obtained through further investigation and discovery, the foregoing Class definition

7  may be expanded or narrowed by amendment or amended complaint.

8      43.   *Numerosity*.  The members of the Class are so numerous that their

9  individual joinder is impracticable.  Plaintiffs are informed and believe, and on that

10  basis allege, that the proposed Class contains many hundreds of thousands of

11  members.  The precise number of Class members is unknown to Plaintiffs.  The true

12  number of Class members is known by the Defendants, however, and thus, may be

13  notified of the pendency of this action by first class mail, electronic mail, and by

14  published notice.

15      44.   *Existence and Predominance of Common Questions of Law and Fact*.

16  Common questions of law and fact exist as to all members of the Class and

17  predominate over any questions affecting only individual Class members.  These

18  common legal and factual questions include, but are not limited to, the following:

19          (a)    Whether the Vehicles were properly tested, using the EPA

20  accepted methodology for FER and MPGE;

21          (b)    Whether the Vehicles stated FER and MPGE inaccurately;

22          (c)    Whether Defendants violated federal or state law as a result of their

23  testing methods or dissemination of FER and MPGE;

24          (d)    Whether a failure to accurately state FER and MPGE constitutes an

25  unlawful business practice or act;

26          (e)    Whether Defendants willfully concealed the misrepresentations

27  regarding FER and MPGE or recklessly disregarded their falsity;

28

(f)     Whether Defendants breached any warranties in selling the Vehicles which misrepresented FER and MPGE;

(g)     Whether Defendants intentionally or negligently misrepresented material facts relating to the character and quality of the Vehicles;

(h)     Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiffs and the members of the Class;

(i)     Whether Defendants were unjustly enriched by their deceptive practices;

(j)     Whether Plaintiffs and the members of the Class are entitled to equitable or injunctive relief; and

(k)     Whether Plaintiffs and the Class are entitled to restitution or damages, and what is the proper measure of damages.

45.     *Typicality*. Plaintiffs' claims are typical of the claims of the Class in that Defendants manufactured, sold, warranted, and marketed defectively designed Vehicles to Plaintiffs, like all other members of the Class.

46.     *Adequacy of Representation*. Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no interests adverse or antagonistic to those of the Class.

47.     *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against the Defendants.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation

would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

48.     In the alternative, the Class may be also certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

49.     The claims asserted herein are applicable to all consumers throughout the United States who purchased the Vehicles.

50.     Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

51.     Damages may be calculated from the claims data maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiffs and the other members of the Class is not a barrier to class certification.

## COUNT I

### Breach of Contract

52.     Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

53.     Through their websites, television advertisements, marketing materials, and vehicle window stickers, as more fully set forth above, Defendants conveyed uniform representations and offers regarding the quality and performance of the their Vehicles, including that they met the represented MPGE and achieved the represented FER.  Plaintiffs and members of the Class accepted Defendants' offer and paid to purchase or lease the Vehicles based on the offer.

54.     Defendants breached the contracts by delivering products that do not perform as offered and promised.  Specifically, the Vehicles do not meet the represented MPGE or achieve the represented FER.

55.     As a direct and proximate cause of Defendants' breach, Plaintiffs and Class members were damaged through the purchase price, higher fuel costs and diminution in the resale value in an amount that will be proven.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

56.     Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

57.     The law implies a covenant of good faith and fair dealing in every contract.

58.     Defendants violated the covenant of good faith and fair dealing in their contracts with Plaintiffs and members of the Class by, *inter alia,* misrepresenting to Plaintiffs and the Class the quality and performance of the Vehicles, including that they met the represented MPGE and achieved the represented FER.  Plaintiffs and members of the Class accepted Defendants' offer and paid to purchase or lease the Vehicles based on the offer.

59.     Plaintiffs and the Class members performed all, or substantially all, of the significant duties required under their agreements with Defendants.

60.     The conditions required for Defendants' performance under the contracts had occurred.

61.     Defendants did not provide and/or unfairly interfered with the right of Plaintiffs and Class members to receive the full benefits under the agreement due to their misrepresentations.

62.     Plaintiffs and Class members were damaged by Defendants' breach through the purchase price, higher fuel costs and diminution in the resale value in an amount that will be proven.

## COUNT III

### Violation of California's Unfair Competition Law,
### California Business and Professions Code §17200 *et seq.*

63.     Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

64.     The Unfair Competition Law ("UCL") prohibits any "unlawful . . . business act or practice." Defendants violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, engaging in false and misleading advertising and omitting material facts, as set forth more fully herein; and violating California Civil Code §§1572-1573, 1709-1710, 1711 and 1770, and the common law. Defendants have also violated the unlawful prong in failing to comply with the accepted testing methods of the EPA and federal requirements that the Vehicles' window stickers reflect their fuel economy information, 40 C.F.R. §600.306-86 (2012). Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

65.     Defendants have also violated the unfair prong of the UCL statute as their misrepresentations regarding MPGE and FER would be material to a reasonable

1 consumer and, in fact, were material to Plaintiffs and other members of the Class in

2 purchasing and/or leasing their Vehicles.

3      66.    Defendants' acts, omissions, misrepresentations, practices, and non-

4 disclosures alleged herein also constitute "unfair" business acts and practices within

5 the meaning of the UCL in that Defendants' conduct is substantially injurious to

6 consumers, offends public policy, and is immoral, unethical, oppressive, and

7 unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable

8 to such conduct.

9      67.    As stated herein, Plaintiffs allege violations of consumer protection,

10 unfair competition, and truth in advertising laws in California resulting in harm to

11 consumers. Plaintiffs assert violations of the public policy by engaging in false and

12 misleading advertising, unfair competition, and deceptive conduct towards consumers.

13 The conduct constitutes violations of the unfair prong of the UCL. There were

14 reasonably available alternatives to further Defendants' legitimate business interests,

15 other than the conduct described herein.

16      68.    Defendants' claims, non-disclosures, and misleading statements, as more

17 fully set forth above, were false, misleading, and/or likely to deceive the consuming

18 public within the meaning of the UCL.

19      69.    Defendants' conduct caused and continues to cause substantial injury to

20 Plaintiffs and other Class members. Plaintiffs have suffered injury in fact and have

21 lost money as a result of Defendants' unfair conduct.

22      70.    Defendants have thus engaged in unlawful, unfair, and fraudulent

23 business acts and practices and in false advertising, entitling Plaintiffs and the other

24 Class members to judgment and equitable relief against Defendants as set forth in the

25 Prayer for Relief. Additionally, pursuant to California Business and Professions

26 Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease

27 such acts of unlawful, unfair, and fraudulent business practices and requiring

28 Defendants to engage in a corrective marketing campaign.

## COUNT IV

### False and Misleading Advertising in Violation of California Business and Professions Code §17500 *et seq.*

71.    Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

72.    Defendants' acts and practices as described herein have deceived and/or are likely to deceive Plaintiffs, members of the Class, and the public.  Defendants have spent millions of dollars to advertise, including through their websites on the Internet, to call attention to, or give publicity to Defendants' Vehicles' MPGE and FER.  Defendants uniformly and falsely advertise MPGE and FER on all Vehicles.

73.    By their actions, Defendants are disseminating uniform advertising concerning their products and services that by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business and Professions Code §17500 *et seq.*  Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

74.    The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have the likelihood to deceive.

75.    In making and disseminating the statements alleged herein, Defendants should have known their advertisements were untrue and misleading in violation of California Business and Professions Code §17500 *et seq.*  Plaintiffs and the other Class members based their decisions to purchase/lease their Vehicles in substantial part on Defendants' misrepresentations and omitted material facts.  The revenues to Defendants attributable to products sold in those false and misleading advertisements amount to millions of dollars for their Vehicles.  Plaintiffs and the Class were injured in fact and lost money or property as a result, both in terms of purchase price, diminution of value, and the differential cost of fuel.

76.    The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and,

therefore, constitute a violation of California Business and Professions Code §17500 *et seq.*

77.   As a result of Defendants' wrongful conduct, Plaintiffs and the Class request that this Court enjoin Defendants from continuing to violate California Business and Professions Code §17500 *et seq.*   It is believed such conduct is ongoing and continues to this date.   Plaintiffs and the Class are therefore entitled to the relief described below as appropriate for this Cause of Action.

**COUNT V**

**Violations of the Consumers Legal Remedies Act
California Civil Code §1750 *et seq.***

78.   Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

79.   This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA").   Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions that were intended to result in, and did result in, the sale of the product:

(a)   Representing that their Vehicles have characteristics and benefits which they do not have;

(b)   Representing that their Vehicles are of a particular standard, quality, or grade, which they are not;

(c)   Advertising their Vehicles with intent not to sell them as advertised; and/or

(d)   Representing that their Vehicles have been supplied in accordance with previous representations when they have not.

80.   Defendants knew, or should have known, that their representations and advertisements regarding their Vehicles were false and misleading.

81.   Defendants' conduct was malicious, fraudulent, and wanton, and provided misleading information.

82.   Pursuant to California Civil Code §1782(d), Plaintiffs seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

83.   Pursuant to California Civil Code §1782, Defendants have been noticed because Plaintiffs sent notice letters to Defendant Ford by certified mail, return receipt requested.   Plaintiffs' letters advised Defendant Ford that it is in violation of the CLRA and must correct and otherwise rectify the goods alleged to be in violation of California Civil Code §1770.   Defendant Ford was further advised that in the event the relief requested has not been provided within thirty (30) days, Plaintiffs will amend this complaint to seek monetary damages pursuant to the CLRA.

84.   As a proximate result of Defendants' deceptive acts, Plaintiffs and the public, including the Class, have been damaged.

85.   Plaintiffs also seek injunctive relief for the violation of the CLRA.

86.   Plaintiffs seek attorney fees and costs as allowed by law.

## COUNT VI

### Breach of Express Warranty

87.   Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

88.   The Uniform Commercial Code §2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

89.   Plaintiffs and the other members of the Class formed a contract with Defendants at the time Plaintiffs and Class members purchased or leased their Vehicles.   The terms of the contract include the promises and affirmations of fact and express warranties made by Defendants on the Vehicles' window stickers, Defendants' websites, and through their marketing and advertising campaigns.

90.   Defendants' marketing and advertising constitute express warranties, which served as part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the other members of the Class, on the one hand, and Defendants on the other.

91.   Plaintiffs and the other members of the Class were exposed to these statements and reasonably relied upon such promises and affirmations of fact contained in Defendants' marketing campaign.

92.   These warranties were not true, as Defendants' Vehicles did not provide the promised fuel efficiency, as described above.

93.   Defendants breached the terms of these contracts, including the express warranties, by not providing the products as advertised as described above.

94.   At all times, California and the following 48 states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of merchantability: Ala. Code §7-2-313; Alaska Stat. §45.02.313; Ariz. Rev. Stat. §47-2313; Ark. Code Ann. §4-2-313; Cal. Com. Code §2313; Colo. Rev. Stat. §4-2-313; Conn. Gen. Stat. §42a-2-313; Del. Code Ann. tit. 6, §2-313; D.C. Code §28:2-313; Fla. Stat. §672.313; Ga. Code Ann. §11-2-313; Haw. Rev. Stat. §490:2-313; Idaho Code Ann. §28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code Ann. §26-1-2-313; Iowa Code §554.2313; Kan. Stat. Ann. §84-2-313; Ky. Rev. Stat. Ann. §355.2-313; 11 Me. Rev. Stat. §2-313; Md. Code Ann., Com. Law §2-313; Mass. Gen. Laws. ch. 106, §2-313; Mich. Comp. Laws §440.2313; Minn. Stat. §336.2-313; Miss. Code Ann. §75-2-313; Mo. Rev. Stat. §400.2-313; Mont. Code Ann. §30-2-313; Nev. Rev. Stat. §104.2313; N.H. Rev. Stat. Ann. §382-A:2-313; N.J. Stat. Ann. §12A:2-313; N.M. Stat. Ann. §55-2-313; N.Y. U.C.C. Law §2-313; N.C. Gen. Stat. §25-2-313; N.D. Cent. Code §41-02-30; Ohio Rev. Code Ann. §1302.26; Okla. Stat. tit. 12A, §2-313; Or. Rev. Stat. §72.3130; 13 Pa. Cons. Stat. §2313; R.I. Gen. Laws §6A-2-313; S.C. Code Ann. §36-2-313; S.D. Codified Laws §57A-2-313; Tenn. Code Ann. §47-2-313; Tex. Bus. & Com.

1  Code Ann. §2.313; Utah Code Ann. §70A-2-313; Vt. Stat. Ann. tit. 9A, §2-313; Va.

2  Code Ann. §8.2-313; Wash. Rev. Code §62A.2-313; W. Va. Code §46-2-313; Wis.

3  Stat. §402.313; and Wyo. Stat. Ann. §34.1-2-313.

4       95.   As a result of Defendants' breaches of their contract and express

5  warranties, Plaintiffs and the Class have been damaged in the amount of the purchase

6  price of Defendants' products, the diminution of value of their Vehicles, and the

7  increased costs of fuel.

8       96.   All conditions precedent to Defendants' liability under this express

9  contract, including notice, have been performed by Plaintiffs and the Class as

10  described above.

11                          **COUNT VII**

12              **Violations of the Magnuson-Moss Warranty Act**
                **15 U.S.C. §2301** *et seq.*

13

14       97.   Plaintiffs reallege and incorporate by reference the previous allegations

15  as if fully set forth herein.

16       98.   Plaintiffs and Class members are "consumers" within the meaning of the

17  Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq. ("MMWA").

18       99.   Defendants are "suppliers" and "warrantors" within the meaning of the

19  MMWA.

20       100.   The Vehicles are a "consumer product" within the meaning of the

21  MMWA.

22       101.   Defendants' written affirmations of fact, promises and/or descriptions as

23  alleged herein are each a "written warranty" as to the Vehicles MPGE and FER and/or

24  there exists an implied warranty for the sale of such product within the meaning of the

25  MMWA.

26       102.   For the reasons detailed above, Defendants breached these express and

27  implied warranties, as the Vehicles do not perform as Defendants represented or were

28

1  not fit for their intended use.  Defendants have refused to remedy such breaches, and

2  their conduct caused damages to Plaintiffs and members of the Class.

3      103.  The amount in controversy meets or exceeds the sum or value of $50,000

4  (exclusive of interest and costs) computed on the basis of all claims to be determined

5  in this suit.

6      104.  Resorting to any informal dispute settlement procedure and/or affording

7  Defendants another opportunity to cure these breaches of warranties is unnecessary

8  and/or futile.  Any remedies available through any informal dispute settlement

9  procedure would be inadequate under the circumstances, as Defendants have failed to

10  remedy the problems associated with the Vehicles, and, as such, have indicated they

11  have no desire to participate in such a process at this time.  Any requirement under the

12  MMWA or otherwise that Plaintiffs resort to any informal dispute settlement

13  procedure and/or afford Defendants a reasonable opportunity to cure the breach of

14  warranties described above is excused and/or has been satisfied.

15      105.  As a result of Defendants' breaches of warranty, Plaintiffs and the other

16  Class members have sustained damages and other losses in an amount to be

17  determined at trial.  Plaintiffs and the other Class members are entitled to recover

18  damages, specific performance, costs, attorneys' fees, rescission, and/or other relief as

19  is deemed appropriate.

20  ## COUNT VIII

21  ## Intentional Misrepresentation

22      106.  Plaintiffs reallege and incorporate by reference the previous allegations

23  as if fully set forth herein.

24      107.  At all relevant times, Defendants were engaged in the business of

25  designing, manufacturing, marketing, distributing or selling their Vehicles.

26      108.  Defendants, acting through their officers, agent, servants, representatives,

27  or employees, delivered the Vehicles through their dealerships.

28

109.   Defendants willfully, falsely, and knowingly misrepresented various material facts regarding the fuel efficiency ratings of their Vehicles.   These misrepresentations are contained in various advertising and marketing materials disseminated   or   caused   to   be   disseminated   by   Defendants,   and   such misrepresentations were further reiterated and disseminated by Defendants' officers, agents, representatives, servants, or employees acting within the scope of their authority, so employed by Defendants to market and distribute their Vehicles.

110.   Defendants' representations were made with the intent that the general public, including Plaintiffs and the other Class members, rely upon them. Defendants' representations were made with knowledge of the falsity of such statements or in reckless disregard of the truth thereof. If Plaintiffs and the Class had been aware of these suppressed facts, Plaintiffs and the Class would not have purchased and/or leased their Vehicles at the price sold and/or leased by Defendants. In reliance upon these misrepresentations, Plaintiffs and members of the Class purchased their Vehicles.

111.   Upon information and belief, Plaintiffs and the Class allege that Defendants misrepresented material facts with the intent to defraud Plaintiffs and the Class.   The information withheld from Plaintiffs and the other Class members is material and would have been considered by a reasonable person, as detailed herein.

112.   Plaintiffs and the Class purchased their Vehicles under the impression that they would function and perform as advertised, the direct and proximate results of which were injury and harm to Plaintiffs and the Class.

## COUNT IX

### Negligent Misrepresentation

113.   Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

114.   Defendants negligently and recklessly misrepresented various material facts regarding the quality and character of their Vehicles, under circumstances where

Defendants either knew or reasonably should have known that the representations were not true.  These misrepresentations were contained in various advertising and marketing from Defendants, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants, or employees of Defendants acting within the scope of their authority.

115.   The information withheld from Plaintiffs and the other Class members is material and would have been considered by a reasonable person, as are the misrepresentations regarding the Vehicles, as detailed herein.

116.   Plaintiffs and the Class purchased and/or leased their Vehicles under the impression that they would function and perform as advertised, the direct and proximate results of which were injury and harm to Plaintiffs and the Class.

## COUNT X

### Unjust Enrichment

117.   Plaintiffs reallege and incorporate by reference the previous allegations as if fully set forth herein.

118.   Defendants have benefited and been enriched by the above-alleged conduct.  Defendants have generated revenue from the unlawful conduct described above.

119.   Defendants have knowledge of this benefit.

120.   Defendants have voluntarily accepted and retained this benefit.

121.   The circumstances, as described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class.

122.   Plaintiffs and the Class are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair and inequitable conduct as alleged herein.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants as follows:

A. Certification of this action as a class action, appointment of Plaintiffs as Class representatives and the undersigned counsel as Class counsel;

B. An order declaring the actions complained of herein to be in violation of the statutory law set forth above, including a preliminary injunction enjoining Defendants from further acts in violation of the CLRA and California Business and Professions Code §17200, pending the outcome of this action;

C. An order enjoining and restraining Defendants from any further acts in violation of the CLRA and California Business and Professions Code §§17200 and 17500, as set forth above;

D. An order requiring Defendants to notify Class members about the inaccuracies and to provide correct information to the Class;

E. An award of compensatory damages, statutory damages, and all other forms of monetary and non-monetary relief recoverable under state law;

F. An award of pre-judgment and post-judgment interest;

G. An award of injunctive relief;

H. An award of costs, including, but not limited to, discretionary costs, expert fees, attorneys' fees and expenses incurred in prosecuting this case; and

I. Grant such other and further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED: December 28, 2012   ROBBINS GELLER RUDMAN
               & DOWD LLP
               RACHEL L. JENSEN

*Rachel L. Jensen*
              RACHEL L. JENSEN

1

2          655 West Broadway, Suite 1900
           San Diego, CA  92101
3          Telephone:  619/231-1058
           619/231-7423 (fax)

4          ROBBINS GELLER RUDMAN
             & DOWD LLP
5          SAMUEL H. RUDMAN
           ROBERT ROTHMAN
6          MARK S. REICH
           AVITAL MALINA
7          58 South Service Road, Suite 200
           Melville, NY  11747
8          Telephone:  631/367-7100
           631/367-1173 (fax)

9          ROBBINS GELLER RUDMAN
             & DOWD LLP
10         PAUL J. GELLER
           JACK REISE
11         STUART A. DAVIDSON
           MARK DEARMAN
12         120 East Palmetto Park Road, Suite 500
           Boca Raton, FL  33432
13         Telephone:  561/750-3000
           561/750-3364 (fax)

14

15         JOHNSON & WEAVER, LLP
           BRETT M. WEAVER
16         110 West A Street, Suite 750
           San Diego, CA  92101
17         Telephone:  619/230-0063
           619/255-1856 (fax)

18
           Attorneys for Plaintiffs and the Proposed
19         Class

20    S:\CptDraft\Consumer\Cpt Ford.doc

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV12- 2232 DOC (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN D. STRAND, NATHAN MONTIJO and MORGAN BENGGIO, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br>v.<br><br>FORD MOTOR COMPANY and DOES 1-50, inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV 12 - 02232 DOC (JPRx)**<br><br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Rachel J. Jensen_____, whose address is _Robbins Geller Rudman & Dowd LLP, 655 W. Broadway, #1900, San Diego, CA 92101_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 12 | 28 | 2012

By: _____ **DENISE V**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
STEVEN D. STRAND, NATHAN MONTIJO and MORGAN BENGGIO,
Individually and on Behalf of All Others Similarly Situated

**DEFENDANTS**
FORD MOTOR COMPANY and DOES 1-50, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
RACHEL L. JENSEN (211456)        619/231-1058
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900, San Diego, CA 92101

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 240 Torts to Land | **IMMIGRATION** | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **SACV 12 - 02232 DOC (JPRx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)

CIVIL COVER SHEET

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                        ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                        ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                        ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Michigan |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Rachel L. Jensen_     Date December 28, 2012

    **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |