1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   RACHEL L. JENSEN (211456)
    655 West Broadway, Suite 1900
3   San Diego, CA  92101
    Telephone:  619/231-1058
4   619/231-7423 (fax)
    rachelj@rgrdlaw.com
5
    MCCUNE WRIGHT, LLP
6   RICHARD D. MCCUNE (132124)
    ELAINE S. KUSEL
7   2068 Orange Tree Lane, Suite 216
    Redlands, CA  92374
8   Telephone:  909/557-1250
    909/557-1275 (fax)
9   rdm@mccunewright.com
    esk@mccunewright.com
10
    Co-Lead Counsel for Plaintiffs and the Class
11
    [Additional counsel appear on signature page.]
12
                      UNITED STATES DISTRICT COURT
13
                     CENTRAL DISTRICT OF CALIFORNIA
14
                            SOUTHERN DIVISION
15

| 16 | In re FORD FUEL EFFICIENCY LITIGATION | ) ) ) | Master File No. SACV-12-02232-DOC(JPRx) |
| 17 | | ) ) | CLASS ACTION |
| 18 | This Document Relates To: | ) ) | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| 19 | ALL ACTIONS. | ) ) ) | |

20

21                                    **DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

832029_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

This consumer fraud class action is based on Defendant Ford Motor Company's ("Ford" or the "Company") false and misleading advertising campaign for certain of its models.  Plaintiffs Richard Pitkin, Robert Renteria, Young Kwun, Guy Mossman, Donna Stimmel, L. David Sikes, C. Diane Sikes, Scott Gordon Grow, Matthew Parkhurst, Nan Le-Khanh Lewis, Alfonso Lerma, Angel Rivera, Bruce Klafter, Johanna Fontenot, Dwayne McDaniel and Claudia McDaniel, Nathan Montijo, Gregory Holman, Michel Jocelyn, Kermit Wilkins, April Tibbetts, Adele Rovetto, Jeremy Dobbs, Leo Rowe, Gary Cole, Richard Weglarz, Raymond Belded, Gary Zack, Steven Yamin, Roger Ritten, Dean Majkrzak, Jeremie Kahler and Amber Kahler, Peter Patroni, Octavio Hoyos, Lawrence Moss, Burneta Barley, Phillip Rider, Sylvester Lazuka and Patricia Lazuka, Mark Goodale, Gary Druckenmiller, Stanley Lindsey and Elizabeth Lindsey, Keith Howe, Melissa Schmidt, Charles Savage, Allen Bluhm, Richard Fox, and Dennis Harkins, (collectively, "Plaintiffs") bring this action for compensatory damages and equitable, injunctive, and declaratory relief against Ford and Does 1-50, who designed, manufactured, marketed, distributed, and/or sold the vehicles at issue (collectively, "Defendants").  Plaintiffs, individually and on behalf of all others similarly situated, allege the following upon their own knowledge, or where there is no personal knowledge, upon information and belief, and/or the investigation of counsel.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(1), as modified by the Class Action Fairness Act of 2005, because the Plaintiffs and Ford are citizens of different states, there are more than 100 members of the Class (as defined herein), and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys' fees, interest, and costs.

2.      This Court has personal jurisdiction over Ford because Ford has conducted and continues to conduct business in the State of California and because

- 1 -

832029_1

1  Ford committed the acts and omissions complained of herein, in part, in the State of
2  California.

3      3.      Pursuant to 28 U.S.C. §1931(b), venue as to Ford is proper in this
4  District.   Ford sells a substantial amount of automobiles in this District, has
5  dealerships in this District, and many of Ford's acts complained of herein occurred in
6  this District.

7                            **GENERAL ALLEGATIONS**

8      4.      This is a consumer class action brought on behalf of Plaintiffs and all
9  others similarly situated who purchased or leased certain C-MAX and Fusion vehicles,
10 as described and defined in more detail below.  Upon information and belief, tens of
11 thousands of these vehicles were distributed in the United States and marketed and
12 sold by Defendants based on affirmative misrepresentations and material omissions
13 concerning the vehicles' miles per gallon ("MPG"), miles per gallon gasoline
14 equivalent ("MPGe"), and fuel economy rating ("FER") (collectively, "fuel
15 economy"), including Ford's extensive, nationwide marketing and advertising
16 campaign, which touted the vehicles' purported 47 MPG in city and highway driving
17 and driving range per tank of gas which Ford contended made the vehicles leaders in
18 their respective classes in fuel economy,  beating out all competitors – including
19 Toyota's Prius v.  Through its false and misleading advertising, Defendant Ford has
20 sold hundreds of thousand of vehicles nationwide, including to Plaintiffs and other
21 Class members.

22     5.      The timing of Defendants' actions is not a coincidence. Fuel economy is
23 more important than ever to consumers in this country.  Ford is aware that fuel costs
24 have been skyrocketing, consumers have less to spend on costly fuel, and consumers
25 are looking for ways to burn less fuel and reduce their carbon footprint.   Ford
26 capitalized on this consumer trend and marketed its vehicles through ad campaigns
27 that misrepresented the vehicles' fuel economy.

28

832029_1

- 2 -

6.     Recently, *Consumer Reports* performed independent testing and determined that the data Ford touted about its fuel economy rates was inaccurate. This is not conduct exclusive to Ford.  In fact, on November 2, 2012, Hyundai and Kia announced to the consuming public that they would lower their FERs for models which were sold from 2010 through October 31, 2012.[1]

7.     However, *Consumer Reports* stated that Ford's hybrid vehicles had the largest discrepancy between their overall results and the estimates published that *Consumer Reports* had seen among any current models.[2]

8.     Ford misleadingly marketed the fuel economy of the 2010 Fusion Hybrid SE (the "2010 Fusion"), 2011 Fusion Hybrid SE (the "2011 Fusion"), 2012 Fusion Hybrid SE (the "2012 Fusion"), the 2013 Ford Fusion Hybrid SE (the "2013 Fusion" or the "Fusion") (collectively, the "Fusion Hybrids") as well as the 2013 Ford C-MAX SE (the "C-MAX).  The Fusion Hybrids and C-MAX vehicles are collectively referred to herein as the "Vehicles."

9.     Defendants' misrepresentations and material omissions concerning the fuel economy of these Vehicles were misleading, false, and reasonably likely to deceive and did in fact deceive Plaintiffs and other Class members.

10.     In conjunction with each sale or lease of the Vehicles to Plaintiffs and Class members, Defendants expressly warranted the Vehicles' fuel economy.

11.     As a result of Defendants' misrepresentations and material omissions, Plaintiffs and the Class have suffered damages in that they purchased and/or leased Vehicles that they would not have otherwise purchased.  Alternatively, Plaintiffs and

---

[1]     http://www.hyundainews.com/us/en-us/Media/PressRelease.aspx?mediaid=37747&title=hyundai-and-Kia-initiate-voluntary-program-to-adjust-fuel-economy-ratings-on-select-vehicles (last visited Apr. 12, 2013).

[2]     http://news.consumerreports.org/cars/2012/12/video-tests-show-2013-ford-fusion-c-max-hybrids-dont-live-up-to-47-mpg-claims.html (last visited Apr. 12, 2013).

- 3 -

1  the Class would not have paid as much for these Vehicles.  Further, they have suffered

2  damages in increased fuel expenses and the quantifiable diminution of value for their

3  Vehicles.

**PARTIES**

5  **I.     Plaintiffs**

6      **A.     California**

7          **1.     Richard Pitkin**

8        12.     Plaintiff Richard Pitkin is a resident and citizen of Roseville, California.

9  Plaintiff Pitkin purchased a 2013 C-MAX on or about October 30, 2012, at Folsom

10  Lake Ford in Folsom, California.  He made his decision to purchase a C-MAX after

11  researching, viewing, and relying on Ford's television, print, and online

12  advertisements and marketing materials that stated the C-MAX achieved 47 MPG

13  highway, city, and combined.  Fuel efficiency was the primary basis for Plaintiff

14  Pitkin's decision to purchase a C-MAX.

15        13.     Specifically, among other advertisements and marketing materials,

16  Plaintiff Pitkin reviewed the C-MAX brochure, the second page of which contained a

17  photo of the vehicle with the graphic, "47 MPG City & Hwy."  Plaintiff Pitkin also

18  saw commercials in which the narrator said the new C-MAX "beats Prius v with better

19  MPG," and "Say hi to the all new 47 Combined MPG C-MAX Hybrid."  Based on

20  information and belief, these Internet, TV, print, and online advertisements regarding

21  the expected gas mileage of the 2013 C-MAX and Fusion were disseminated by Ford

22  throughout California and the United States.

23        14.     The advertised representation of the 47 MPG FER was the primary

24  reason that Plaintiff Pitkin chose to purchase the 2013 C-MAX.  The representation

25  that the C-MAX would achieve 47 MPG whether driven on the highway, in the city,

26  or in some combination of the two presented the mileage figure as the actual, expected

27  fuel efficiency of the vehicle.

28

- 4 -

832029_1

1    15.    Based on these representations which informed that the C-MAX would

2  achieve 47 MPG in all types of driving, Plaintiff Pitkin reasonably believed that the C-

3  MAX would achieve 47 MPG when driven in the real world.  Plaintiff Pitkin heavily

4  relied on these representations when he decided to buy the 2013 C-MAX.  However,

5  after purchasing the vehicle, Plaintiff Pitkin discovered that it consistently achieved

6  gas mileage far below the advertised mileage under normal real-world use, both on the

7  highway and in the city.

8    16.    Plaintiff Pitkin did not know when he purchased the vehicle that the 47

9  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

10  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

11  Ford would not falsely advertise MPG.  Plaintiff Pitkin has been damaged by Ford's

12  false, misleading, and inadequate representations of the C-MAX's fuel efficiency in

13  that he would not have purchased the vehicle or not paid as much for it, in higher out-

14  of-pocket fuel expenses and the diminution of value of the vehicle.

15    **2.    Robert Renteria**

16    17.    Plaintiff Robert Renteria is a resident and citizen of Ontario, California.

17  Plaintiff Renteria purchased a 2013 C-MAX on or about October 6, 2012, at Galpin

18  Ford in North Hills, California.  He made his decision to purchase a C-MAX after

19  researching, viewing, and relying on Ford's online advertisements and marketing

20  materials (disseminated throughout California and nationwide) that stated the C-MAX

21  achieved 47 MPG highway, city, and combined.  Fuel efficiency was the primary

22  basis for his decision to purchase a C-MAX.  Plaintiff Renteria also considered the

23  Chevrolet Cruze, which is substantially less expensive than the C-MAX.

24    18.    Based on these representations which informed that the C-MAX would

25  achieve 47 MPG in all types of driving, Plaintiff Renteria reasonably believed that the

26  C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

27  Renteria heavily relied on these representations when he decided to buy the 2013 C-

28  MAX.  However, after purchasing the vehicle, Plaintiff Renteria discovered that it

- 5 -

1  consistently achieved gas mileage far below the advertised mileage under normal,

2  real-world use, both on the highway and in the city.

3      19.    Plaintiff Renteria did not know when he purchased the vehicle that the 47

4  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

5  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

6  Ford would not falsely advertise MPG.  Plaintiff Renteria has been damaged by Ford's

7  false, misleading, and inadequate representations of the C-MAX's fuel efficiency in

8  that he would not have purchased the vehicle or not paid as much for it, in higher out-

9  of-pocket fuel expenses and the diminution of value of the vehicle.

10      **3.    Young Kwun**

11      20.    Plaintiff Young Kwun is a resident and citizen of Riverside, California.

12  Plaintiff Kwun purchased a 2013 C-MAX in October 2012 at Hemborg Ford in Norco,

13  California.  He made his decision to purchase a C-MAX after researching, viewing,

14  and relying on Ford's online and newspaper advertisements and marketing materials

15  that stated the C-MAX achieved 47 MPG highway, city, and combined.   Fuel

16  efficiency was the primary basis for his decision to purchase a C-MAX, as he often

17  drives from his home in Riverside to his farm that is north of Bakersfield.

18      21.    Based on these representations which informed that the C-MAX would

19  achieve 47 MPG in all types of driving, Plaintiff Kwun reasonably believed that the

20  C-MAX would actually achieve 47 MPG when driven in the real world.   Plaintiff

21  Kwun heavily relied on these representations when he decided to buy the 2013 C-

22  MAX.   However, after purchasing the vehicle, he discovered that it consistently

23  achieved gas mileage far below the advertised mileage under normal, real-world use,

24  both on the highway and in the city.

25      22.    Plaintiff Kwun did not know when he purchased the vehicle that the 47

26  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

27  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

28  Ford would not falsely advertise MPG.  Plaintiff Kwun has been damaged by Ford's

832029_1

- 6 -

1  false, misleading, and inadequate representations of the C-MAX's fuel efficiency in

2  that he would not have purchased the vehicle or not paid as much for it, in higher out-

3  of-pocket fuel expenses and the diminution of value of the vehicle.

4              **4.    Guy Mossman**

5      23.    Plaintiff Guy Mossman is a resident and citizen of Los Angeles,

6  California.  Plaintiff Mossman purchased a 2013 C-MAX in November 2012, at

7  Huntington Beach Ford in Huntington Beach, California.  He made his decision to

8  purchase a C-MAX after researching, viewing, and relying on Ford's online

9  advertisements and marketing materials that stated the C-MAX achieved 47 MPG

10  highway, city, and combined.  Fuel efficiency was the primary basis for his decision

11  to purchase a C-MAX.  When Plaintiff Mossman's Toyota Prius lease was ending, he

12  learned that there were other hybrids on the market, and after reviewing the various

13  vehicles, was impressed by and relied on Ford's advertisements that the C-MAX

14  achieved better horsepower and fuel efficiency than the Prius in both city and highway

15  driving.

16      24.    Based on these representations which informed that the C-MAX would

17  achieve 47 MPG in all types of driving, Plaintiff Mossman reasonably believed that

18  the C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

19  Mossman heavily relied on these representations when he decided to buy the 2013 C-

20  MAX.  However, after purchasing the vehicle, he discovered that it consistently

21  achieved gas mileage far below the advertised mileage under normal, real-world use,

22  both on the highway and in the city.  He also ended up paying substantially more for

23  less fuel efficiency than he would have achieved if he had purchased a Toyota Prius.

24      25.    Plaintiff Mossman did not know when he purchased the vehicle that the

25  47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

26  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

27  Ford would not falsely advertise MPG.  Plaintiff Mossman has been damaged by

28  Ford's false, misleading, and inadequate representations of the C-MAX's fuel

832029_1

1  economy in that he would not have purchased the vehicle or not paid as much for it, in
2  higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

3          **5.      Donna Stimmel**

4          26.     Plaintiff Donna Stimmel is a resident and citizen of Paso Robles,
5  California.  Plaintiff Stimmel purchased a 2013 C-MAX in November 2012, at Perry
6  Ford in San Luis Obispo, California.  She made her decision to purchase a C-MAX
7  after researching, viewing, and relying on Ford's website and television
8  advertisements and marketing materials, including the vehicle's brochure which stated
9  the C-MAX achieved 47 MPG highway, city, and combined.  Fuel efficiency was the
10  primary basis for her decision to purchase a C-MAX.  She was impressed by and
11  relied on Ford's representations that the C-MAX had better fuel efficiency than the
12  Toyota Prius v.

13          27.     Based on these representations which informed that the C-MAX would
14  achieve 47 MPG in all types of driving, Plaintiff Stimmel reasonably believed that the
15  C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
16  Stimmel heavily relied on these representations when she decided to buy the 2013 C-
17  MAX.  However, after purchasing the vehicle, she discovered that it consistently
18  achieved gas mileage far below the advertised mileage under normal, real-world use,
19  both on the highway and in the city.

20          28.     Plaintiff Stimmel did not know when she purchased the vehicle that the
21  47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
22  efficiency and that the advertised MPG was inaccurate as she reasonably expected that
23  Ford would not falsely advertise MPG.  Plaintiff Stimmel has been damaged by Ford's
24  false, misleading, and inadequate representations of the C-MAX's fuel efficiency in
25  that she would not have purchased the vehicle or not paid as much for it, in higher out-
26  of-pocket fuel expenses and the diminution of value of the vehicle.

27

28

832029_1

1          **6.    L. David Sikes and C. Diane Sikes**

2          29.    Plaintiffs L. David Sikes and C. Diane Sikes are residents and citizens of

3    Half Moon Bay, California.  The Sikes Plaintiffs purchased a 2013 C-MAX on or

4    about November 9, 2012, at James Ford in Half Moon Bay, California.  They made

5    their decision to purchase a C-MAX after researching, viewing, and relying on Ford's

6    website and television advertisements and marketing materials, including the vehicle's

7    brochure, which stated the C-MAX achieved 47 MPG highway, city, and combined.

8    Fuel efficiency was the primary basis for their decision to purchase a C-MAX.  The

9    Sikes Plaintiffs owned a 2005 Toyota Prius, but chose to purchase a C-MAX for their

10   next car based on these MPG advertisements.  They often drive 30 miles round trip on

11   the highway between Half Moon Bay and San Mateo at conservative speeds.

12         30.    Based on Ford's representations which informed that the C-MAX would

13   achieve 47 MPG in all types of driving, the Sikes Plaintiffs reasonably believed that

14   the C-MAX would actually achieve 47 MPG when driving in the real world.  The

15   Sikes Plaintiffs heavily relied on these representations when they decided to buy the

16   2013 C-MAX.  However, after purchasing the vehicle, they discovered that it

17   consistently achieved gas mileage far below the advertised mileage under normal,

18   real-world use, both on the highway and in the city.

19         31.    The Sikes Plaintiffs did not know when they purchased the vehicle that

20   the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

21   efficiency and that the advertised MPG was inaccurate as they reasonably expected

22   that Ford would not falsely advertise MPG.  The Sikes Plaintiffs have been damaged

23   by Ford's false, misleading, and inadequate representations of the C-MAX's fuel

24   economy in that they would not have purchased the vehicle or not paid as much for it,

25   in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

26         **7.    Scott Gordon Grow**

27         32.    Plaintiff Scott Gordon Grow is a resident and citizen of Hayward,

28   California.  Plaintiff Grow purchased a 2013 C-MAX in November 2012, at Fairfield

832029_1

1   Ford in Fairfield, California.  He made his decision to purchase a C-MAX after

2   researching, viewing, and relying on Ford's television advertisements and marketing

3   materials that stated the C-MAX achieved 47 MPG highway, city, and combined.

4   Fuel efficiency was the primary basis for his decision to purchase a C-MAX because

5   of his long commute and rising gas prices. His previous car was a Chevrolet HHR,

6   which achieved MPG rates similar to what he actually got from the C-MAX, but cost

7   substantially less than the C-MAX.

8        33.    Based on these representations which informed that the C-MAX would

9   achieve 47 MPG in all types of driving, Plaintiff Grow reasonably believed that the C-

10  MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff Grow

11  heavily relied on these representations when he decided to buy the 2013 C-MAX.

12  However, after purchasing the vehicle, he discovered that it consistently achieved gas

13  mileage far below the advertised mileage under normal, real-world use, both on the

14  highway and in the city.

15       34.    Plaintiff Grow did not know when he purchased the vehicle that the 47

16  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

17  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

18  Ford would not falsely advertise MPG.  Plaintiff Grow has been damaged by Ford's

19  false, misleading, and inadequate representations of the C-MAX's fuel efficiency in

20  that he would not have purchased the vehicle or not paid as much for it, in higher out-

21  of-pocket fuel expenses and the diminution of value of the vehicle.

22       **8.    Matthew Parkhurst**

23       35.    Plaintiff Matthew Parkhurst is a resident and citizen of Rohnert Park,

24  California.  Plaintiff Parkhurst purchased a 2013 C-MAX on or about December 2,

25  2012, at Future Ford in Roseville, California.  He made his decision to purchase a C-

26  MAX after researching, viewing, and relying on Ford's website and television

27  advertisements and marketing materials, including the vehicle's brochure that stated

28  the C-MAX achieved 47 MPG highway, city, and combined. Fuel efficiency was the

- 10 -

832029_1

1 primary basis for his decision to purchase a C-MAX. He considered both the C-MAX
2 and the Toyota Prius, but ultimately purchased the C-MAX because of the advertised
3 superior fuel economy of the C-MAX and the fact that the vehicle was roomier than
4 the Prius.

5       36.    Based on these representations which informed that the C-MAX would
6 achieve 47 MPG in all types of driving, Plaintiff Parkhurst reasonably believed that
7 the C-MAX would actually achieve 47 MPG when driven in the real world. Plaintiff
8 Parkhurst heavily relied on these representations when he decided to buy the 2013 C-
9 MAX. However, after purchasing the vehicle, he discovered that it consistently
10 achieved gas mileage far below the advertised mileage under normal, real-world use,
11 both on the highway and in the city.

12       37.    Plaintiff Parkhurst did not know when he purchased the vehicle that the
13 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
14 efficiency and that the advertised MPG was inaccurate as he reasonably expected that
15 Ford would not falsely advertise MPG. Had he known, he would have purchased a
16 Prius or a larger vehicle that achieves the same gas mileage as he actually achieves in
17 his C-MAX. Plaintiff Parkhurst has been damaged by Ford's false, misleading, and
18 inadequate representations of the C-MAX's fuel efficiency in that he would not have
19 purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses
20 and the diminution of value of the vehicle.

21       **9.    Nan Le-Khanh Lewis**

22       38.    Plaintiff Nan Le-Khanh Lewis is a resident and citizen of Corona,
23 California. Plaintiff Lewis purchased a 2013 C-MAX on or about October 22, 2012,
24 at Sunrise Ford in Glendale, California. She made her decision to purchase a C-MAX
25 after researching, viewing, and relying on Ford's website and brochure advertisements
26 and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and
27 combined. Fuel efficiency was the primary basis for her decision to purchase a C-
28 MAX.

832029_1

1    39.    Based on these representations which informed that the C-MAX would
2  achieve 47 MPG in all types of driving, Plaintiff Lewis reasonably believed that the
3  C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
4  Lewis heavily relied on these representations when she decided to buy the 2013 C-
5  MAX.  However, after purchasing the vehicle, she discovered that it consistently
6  achieved gas mileage far below the advertised mileage under normal, real-world use,
7  both on the highway and in the city.

8    40.    Plaintiff Lewis did not know when she purchased the vehicle that the 47
9  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
10  efficiency and that the advertised MPG was inaccurate as she reasonably expected that
11  Ford would not falsely advertise MPG.  Plaintiff Lewis has been damaged by Ford's
12  false, misleading, and inadequate representations of the C-MAX's fuel efficiency in
13  that she would not have purchased the vehicle or not paid as much for it, in higher out-
14  of-pocket fuel expenses and the diminution of value of the vehicle.

15              **10.    Alfonso Lerma**

16    41.    Plaintiff Alfonso Lerma is a resident and citizen of Lancaster, California.
17  Plaintiff Lerma purchased a 2013 C-MAX in November 2012, at Antelope Valley
18  Ford in Lancaster, California.  He made his decision to purchase a Ford C-MAX after
19  researching, viewing, and relying on Ford's website and television advertisements and
20  marketing materials, including the vehicle's brochure, that stated the C-MAX
21  achieved 47 MPG highway, city, and combined.  At the time of his purchase, Plaintiff
22  Lerma was planning to retire and wanted to save on gas costs.  Fuel efficiency was the
23  primary basis for his decision to purchase a C-MAX.

24    42.    Based on these representations which informed that the C-MAX would
25  achieve 47 MPG in all types of driving, Plaintiff Lerma reasonably believed that the
26  C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
27  Lerma heavily relied on these representations when he decided to buy the 2013 C-
28  MAX.  However, after purchasing the vehicle, he discovered that it consistently

832029_1

1  achieved gas mileage far below the advertised mileage under normal, real-world use,

2  both on the highway and in the city.

3      43.    Plaintiff Lerma did not know when he purchased the vehicle that the 47

4  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

5  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

6  Ford would not falsely advertise MPG.  Plaintiff Lerma has been damaged by Ford's

7  false, misleading, and inadequate representations the C-MAX's fuel efficiency in that

8  he would not have purchased the vehicle or not paid as much for it, in higher out-of-

9  pocket fuel expenses and the diminution of value of the vehicle.

10     **11.    Angel Rivera**

11     44.    Plaintiff Angel Rivera is a resident and citizen of San Diego, California.

12  Plaintiff Rivera purchased a 2013 C-MAX in November 2012, at Mission Ford in San

13  Diego, California.  He made his decision to purchase a C-MAX after researching,

14  viewing, and relying on Ford's website and newspaper advertisements and marketing

15  materials, including the vehicle's brochure, that stated the C-MAX achieved 47 MPG

16  highway, city, and combined.  Fuel efficiency was the primary basis for his decision

17  to purchase a C-MAX.

18     45.    Based on these representations which informed that the C-MAX would

19  achieve 47 MPG in all types of driving, Plaintiff Rivera reasonably believed that the

20  C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

21  Rivera heavily relied on these representations when he decided to buy the 2013 C-

22  MAX.  However, after purchasing the vehicle, he discovered that it consistently

23  achieved gas mileage far below the advertised mileage under normal, real-world use,

24  both on the highway and in the city.  After driving several thousand miles, Plaintiff

25  Rivera's C-MAX continues to achieve substandard MPG rates.

26     46.    Plaintiff Rivera did not know when he purchased the vehicle that the 47

27  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

28  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

- 13 -

1   Ford would not falsely advertise MPG.  Plaintiff Rivera has been damaged by Ford's

2   false, misleading, and inadequate representations of the C-MAX's fuel economy in

3   that he would not have purchased the vehicle or not paid as much for it, in higher out-

4   of-pocket fuel expenses and the diminution of value of the vehicle.

5               **12.**   **Bruce Klafter**

6        47.    Plaintiff Bruce Klafter is a resident and citizen of San Mateo, California.

7   Plaintiff Klafter purchased a 2013 C-MAX on November 24, 2012, at Serramonte

8   Ford in Colma, California.  He made his decision to purchase a C-MAX after

9   researching, viewing, and relying on Ford's website and brochure advertisements and

10   marketing materials that stated the C-MAX achieved 47 MPG highway, city, and

11   combined.  Fuel efficiency was the primary basis for his decision to purchase a C-

12   MAX.

13        48.    Based on these representations which informed that the C-MAX would

14   achieve 47 MPG in all types of driving, Plaintiff Klafter reasonably believed that the

15   C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

16   Klafter heavily relied on these representations when he decided to buy the 2013 C-

17   MAX.  However, after purchasing the vehicle, he discovered that it consistently

18   achieved gas mileage far below the advertised mileage under normal, real-world use,

19   both on the highway and in the city.  After driving several thousand miles, his C-

20   MAX continues to achieve substandard MPG rates.

21        49.    Plaintiff Klafter did not know when he purchased the vehicle that the 47

22   MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

23   efficiency and that the advertised MPG was inaccurate as he reasonably expected that

24   Ford would not falsely advertise MPG. Plaintiff Klafter has been damaged by Ford's

25   false, misleading, and inadequate representations of the C-MAX's fuel economy in

26   that he would not have purchased the vehicle or not paid as much for it, in higher out-

27   of-pocket fuel expenses and the diminution of value of the vehicle.

28

832029_1

**13.    Johanna Fontenot**

50.    Plaintiff Johanna Fontenot is a resident and citizen of Altadena, California.  Plaintiff Fontenot purchased a 2013 Fusion on or about November 11, 2012, at Advantage Ford in Duarte, California.  She made her decision to purchase a Fusion after researching, viewing, and relying on Ford's website, television, and magazine advertisements and marketing materials, including brochures that stated the Fusion achieved 47 MPG highway, city, and combined.  Fuel efficiency was the primary basis for Plaintiff Fontenot's decision to purchase a Fusion.

51.    Based on these representations which informed that the Fusion would achieve 47 MPG in all types of driving, Plaintiff Fontenot reasonably believed that the Fusion would actually achieve 47 MPG when driven in the real world.  Plaintiff Fontenot heavily relied on these representations when she decided to buy the 2013 Fusion.  However, after purchasing the vehicle, she discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city, even though she drove according to the instructions in a video provided by Ford explaining how to achieve the most fuel efficiency.

52.    Plaintiff Fontenot did not know when she purchased the vehicle that the 47 MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as she reasonably expected that Ford would not falsely advertise MPG.  Plaintiff Fontenot has been damaged by Ford's false, misleading, and inadequate representations of the Fusion's fuel efficiency in that she would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

**14.    Dewayne McDaniel and Claudia McDaniel**

53.    Plaintiffs Dewayne McDaniel and Claudia McDaniel are residents and citizens of Moreno Valley, California.  They purchased a 2013 Fusion on or about November 9, 2012, at Kearny Pearson Ford dealership in San Diego, California.  They

- 15 -

1  made their decision to purchase a Fusion after researching, viewing, and relying on
2  Ford's website (including Ford's YouTube site and Facebook page) and brochure
3  advertisements and marketing materials that stated the Fusion achieved 47 MPG
4  highway, city, and combined. Fuel efficiency was the primary basis for their decision
5  to purchase a Fusion.

6      54.    Based on these representations which informed that the Fusion would
7  achieve 47 MPG in all types of driving, the McDaniel Plaintiffs reasonably believed
8  that the Fusion would actually achieve 47 MPG when driven in the real world. The
9  McDaniel Plaintiffs heavily relied on these representations when they decided to buy
10 the 2013 Fusion. However, after purchasing the vehicle, they discovered that it
11 consistently achieved gas mileage far below the advertised mileage under normal,
12 real-world use, both on the highway and in the city.

13     55.    The McDaniel Plaintiffs did not know when they purchased the vehicle
14 that the 47 MPG estimated mileage for the Fusion overstated the vehicle's estimated
15 fuel efficiency and that the advertised MPG was inaccurate as they reasonably
16 expected that Ford would not falsely advertise MPG. The McDaniel Plaintiffs have
17 been damaged by Ford's false, misleading, and inadequate representations of the
18 Fusion's fuel efficiency in that they would not have purchased the vehicle or not paid
19 as much for it, in higher out-of-pocket fuel expenses and the diminution of value of
20 the vehicle.

21          **15.    Nathan Montijo**

22     56.    Plaintiff Nathan Montijo is a resident and citizen of La Puente,
23 California. Plaintiff Montijo purchased a certified used 2010 non-hybrid Fusion from
24 Galpin Ford in July 2011. Montijo made his decision to purchase a Fusion after
25 researching, viewing, and relying on Ford's radio and print advertisements which
26 touted the Fusion's high fuel economy as approximately 35 MPG. Due to his
27 Southern California commute, fuel efficiency was the primary basis for Plaintiff
28 Montijo's decision to purchase a Fusion.

- 16 -

57.     Based on Ford's advertisements, Plaintiff Montijo reasonably believed that the Fusion would achieve approximately 35 MPG when driven in the real world. Plaintiff Montijo heavily relied on Ford's representations when he decided to buy the vehicle.  However, after purchasing the vehicle, Plaintiff Montijo discovered that it consistently achieved gas mileage far below the advertised mileage under normal real-world use, both on the highway and in the city.  Specifically, Plaintiff Montijo discovered that the vehicle only achieved 24-27 MPG.

58.     Plaintiff Montijo did not know when he purchased the vehicle that Ford's advertisements had overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as he reasonably expected that Ford would not falsely advertise MPG. Plaintiff Montijo has been damaged by Ford's false, misleading, and inadequate representations of the Fusion's fuel efficiency as he would not have purchased the vehicle or not paid as much for it, he would not have paid as much for gas, and the diminution of the value of the vehicle.

59.     Upon discovering that the non-hybrid Fusion was not getting the fuel economy that was advertised, Plaintiff Montijo decided to buy a hybrid vehicle, specifically a Prius. However, after being exposed to Ford's C-MAX advertisements, including billboards, print advertisements, online ads, and website, which all touted the C-MAX as achieving better fuel economy than the Prius, and with more horse power, Montijo decided to buy a C-MAX instead.

60.     Plaintiff Montijo purchased a 2013 C-MAX at Santa Monica Ford, trading in his Fusion for $11,270.  The C-MAX was advertised as getting approximately 47 MPGe, but the vehicle has not performed as advertised, getting much lower fuel economy in the range of 35 MPG.  Had Plaintiff Montijo been aware of Defendants' misrepresentations concerning the fuel economy of the 2013 C-MAX, he would not have purchased the vehicle or would not have paid as much for the Vehicle.  Further, as a result of the misrepresentations, Plaintiff Montijo has also

- 17 -

832029_1

1  suffered damages in higher out-of-pocket fuel expenses and the diminution of the
2  value of his C-MAX.

3  **B.  Arizona Plaintiff: Gregory Holman**

4  61.    Plaintiff Gregory Holman is a resident and citizen of Phoenix, Arizona.
5  Plaintiff Holman purchased a 2013 C-MAX on December 6, 2012, at Power Ford in
6  Scottsdale, Arizona.  He made his decision to purchase a C-MAX after researching,
7  viewing, and relying on Ford's website, Facebook page, and brochure advertisements
8  and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and
9  combined.  Fuel efficiency was the primary basis for Plaintiff Holman's decision to
10  purchase a C-MAX.

11  62.    Based on these representations which informed that the C-MAX would
12  achieve 47 MPG in all types of driving, Plaintiff Holman reasonably believed that the
13  C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
14  Holman heavily relied on these representations when he decided to buy the 2013 C-
15  MAX.  However, after purchasing the vehicle, he discovered that it consistently
16  achieved gas mileage far below the advertised mileage under normal, real-world use,
17  both on the highway and in the city.  After several thousands of miles of driving,
18  Plaintiff Holman's C-MAX continues to achieve substandard MPG rates.

19  63.    Plaintiff Holman did not know when he purchased the vehicle that the 47
20  MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
21  efficiency and that the advertised MPG was inaccurate as he reasonably expected that
22  Ford would not falsely advertise MPG.  Plaintiff Holman has been damaged by Ford's
23  false, misleading, and inadequate representations of the C-MAX's fuel economy in
24  that he would not have purchased the vehicle or not paid as much for it, in higher out-
25  of-pocket fuel expenses and the diminution of value of the vehicle.

26
27
28

832029_1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   Colorado

#### 1.   Michel Jocelyn

64.   Plaintiff Michel Jocelyn is a resident and citizen of Littleton, Colorado. Plaintiff Jocelyn purchased a 2013 C-MAX on October 10, 2012, at Lakewood Fordland in Lakewood, Colorado. He made his decision to purchase a C-MAX after researching, viewing, and relying on Ford's website, television advertisements, and brochure advertisements and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and combined. Fuel efficiency was the primary basis for Plaintiff Jocelyn's decision to purchase a C-MAX.

65.   Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, Plaintiff Jocelyn reasonably believed that the C-MAX would actually achieve 47 MPG when driven in the real world. Plaintiff Jocelyn heavily relied on these representations when he decided to buy the 2013 C-MAX. However, after purchasing the vehicle, he discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city. After several thousands of miles of driving, his C-MAX continues to achieve substandard MPG rates.

66.   Plaintiff Jocelyn did not know when he purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as he reasonably expected that Ford would not falsely advertise MPG. Plaintiff Jocelyn has been damaged by Ford's false, misleading, and inadequate representations of the C-MAX's fuel economy in that he would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

#### 2.   Kermit Wilkins

67.   Plaintiff Kermit Wilkins is a resident and citizen of Holyoke, Colorado. Plaintiff Wilkins purchased a 2013 Fusion on or about November 20, 2012, at Lakewood Fordland in Lakewood, Colorado. He made his decision to purchase a

- 19 -

832029_1

1  Fusion after researching, viewing, and relying on Ford's website advertisements and
2  marketing materials that stated the Fusion achieved 47 MPG highway, city, and
3  combined.  Fuel efficiency was the primary basis for his decision to purchase a
4  Fusion.  He also considered the Toyota Prius, but chose the Fusion because it was
5  advertised as having more power and better fuel economy than the Prius.

6       68.    Based on these representations which informed that the Fusion would
7  achieve 47 MPG in all types of driving, Plaintiff Wilkins reasonably believed that the
8  Fusion would actually achieve 47 MPG when driven in the real world.  Plaintiff
9  Wilkins heavily relied on these representations when he decided to buy the 2013
10  Fusion.  However, after purchasing the vehicle, he discovered that it consistently
11  achieved gas mileage far below the advertised mileage under normal, real-world use,
12  both on the highway and in the city.

13       69.    Plaintiff Wilkins did not know when he purchased the vehicle that the 47
14  MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel
15  efficiency and that the advertised MPG was inaccurate as he reasonably expected that
16  Ford would not falsely advertise MPG. Plaintiff Wilkins has been damaged by Ford's
17  false, misleading, and inadequate representations of the Fusion's fuel efficiency in that
18  he would not have purchased the vehicle or not paid as much for it, in higher out-of-
19  pocket fuel expenses and the diminution of value of the vehicle.

20      **D.**    **Connecticut Plaintiff: April Tibbetts**

21       70.    Plaintiff April Tibbetts is a resident and citizen of Terryville,
22  Connecticut. Plaintiff Tibbetts purchased a 2013 C-MAX on November 30, 2012, at
23  Hammonasset Ford in Madison, Connecticut.  She made her decision to purchase a C-
24  MAX after researching, viewing, and relying on Ford's website, television, and
25  brochure advertisements and marketing materials that stated the C-MAX achieved 47
26  MPG highway, city, and combined.  Fuel efficiency was the primary basis for her
27  decision to purchase a C-MAX.  She also considered purchasing the Toyota Prius but
28  chose the Ford vehicle because of the represented fuel efficiency.

- 20 -

832029_1

71.     Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, Plaintiff Tibbetts reasonably believed that the C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff Tibbetts heavily relied on these representations when she decided to buy the 2013 C-MAX.  However, after purchasing the vehicle, she discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city.  After several thousands of miles of driving, her C-MAX continues to achieve substandard MPG rates.

72.     Plaintiff Tibbetts did not know when she purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as she reasonably expected that Ford would not falsely advertise MPG.  Plaintiff Tibbetts has been damaged by Ford's false, misleading, and inadequate representations of the C-MAX's fuel economy in that she would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

**E.     Florida**

**1.     Adele Rovetto**

73.     Plaintiff Adele Rovetto is a resident and citizen of Plantation, Florida. Plaintiff Rovetto purchased a 2013 C-MAX on October 31, 2012, at Sawgrass Ford in Sunrise, Florida.  She made her decision to purchase a C-MAX after researching, viewing, and relying on Ford's website advertisements and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and combined.  Fuel efficiency was the primary basis for her decision to purchase a C-MAX.

74.     Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, Plaintiff Rovetto reasonably believed that the C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff Rovetto heavily relied on these representations when she decided to buy the 2013 C-MAX.  However, after purchasing the vehicle, she discovered that it consistently

- 21 -

1  achieved gas mileage far below the advertised mileage under normal, real-world use,

2  both on the highway and in the city.

3       75.   Plaintiff Rovetto did not know when she purchased the vehicle that the

4  47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

5  efficiency and that the advertised MPG was inaccurate as she reasonably expected that

6  Ford would not falsely advertise MPG.  Plaintiff Rovetto has been damaged by Ford's

7  false, misleading, and inadequate representations of the C-MAX's fuel economy in

8  that she would not have purchased the vehicle or not paid as much for it, in higher out-

9  of-pocket fuel expenses and the diminution of value of the vehicle.

10       **2.   Jeremy Dobbs**

11       76.   Plaintiff Jeremy Dobbs is a resident and citizen of Orlando, Florida.

12  Plaintiff Dobbs purchased a 2013 Fusion on or about December 17, 2012, at Sunstate

13  Ford in Orlando, Florida.   He made his decision to purchase a Fusion after

14  researching, viewing, and relying on Ford's website advertisements and marketing

15  materials that stated the Fusion achieved 47 MPG highway, city, and combined.  Fuel

16  efficiency was the primary basis for his decision to purchase a Fusion.

17       77.   Based on these representations which informed that the Fusion would

18  achieve 47 MPG in all types of driving, Plaintiff Dobbs reasonably believed that the

19  Fusion would actually achieve 47 MPG when driven in the real world.  Plaintiff

20  Dobbs heavily relied on these representations when he decided to buy the 2013

21  Fusion.  However, after purchasing the vehicle, he discovered that it consistently

22  achieved gas mileage far below the advertised mileage under normal, real-world use,

23  both on the highway and in the city.

24       78.   Plaintiff Dobbs did not know when he purchased the vehicle that the 47

25  MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

26  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

27  Ford would not falsely advertise MPG. Plaintiff Dobbs has been damaged by Ford's

28  false, misleading, and inadequate representations of the Fusion's fuel efficiency in that

- 22 -

832029_1

1  he would not have purchased the vehicle or not paid as much for it, in higher out-of-
2  pocket fuel expenses and the diminution of value of the vehicle.

3       **F.     Georgia Plaintiff: Leo Rowe**

4       79.    Plaintiff Leo Rowe is a resident and citizen of Montgomery County,
5  Georgia.  Plaintiff Rowe purchased a 2013 Fusion on or about December 10, 2012, at
6  Cherokee Ford in Woodstock, Georgia.  He made his decision to purchase a Fusion
7  after researching, viewing, and relying on Ford's website, television, and brochure
8  advertisements and marketing materials that stated the Fusion achieved 47 MPG
9  highway, city, and combined.  Fuel efficiency was the primary basis for his decision
10 to purchase a Fusion Hybrid.

11      80.    Based on these representations which informed that the Fusion would
12 achieve 47 MPG in all types of driving, Plaintiff Rowe reasonably believed that the
13 Fusion Hybrid would actually achieve 47 MPG when driven in the real world.
14 Plaintiff Rowe heavily relied on these representations when he decided to buy the
15 2013 Fusion.  However, after purchasing the vehicle, he discovered that it consistently
16 achieved gas mileage far below the advertised mileage under normal, real-world use,
17 both on the highway and in the city.

18      81.    Plaintiff Rowe did not know when he purchased the vehicle that the 47
19 MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel
20 efficiency and that the advertised MPG was inaccurate as he reasonably expected that
21 Ford would not falsely advertise MPG.  Plaintiff Rowe has been damaged by Ford's
22 false, misleading, and inadequate representations of the Fusion's fuel efficiency in that
23 he would not have purchased the vehicle or not paid as much for it, in higher out-of-
24 pocket fuel expenses and the diminution of value of the vehicle.

25      **G.     Illinois**

26           **1.     Gary Cole**

27      82.    Plaintiff Gary Cole is a resident and citizen of Wakarusa, Indiana.
28 Plaintiff Cole purchased a 2013 C-MAX on January 2, 2013, at Fair Oaks Ford in

832029_1

1  Naperville, Illinois.  He made his decision to purchase a Ford C-MAX  after
2  researching, viewing, and relying on Ford's website, television, and brochure
3  advertisements and marketing materials that stated the C-MAX achieved 47 MPG
4  highway, city, and combined.  Fuel efficiency was the primary basis for his decision
5  to purchase a C-MAX.

6       83.   Based on these representations which informed that the C-MAX would
7  achieve 47 MPG in all types of driving, Plaintiff Cole reasonably believed that the C-
8  MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff Cole
9  heavily relied on these representations when he decided to buy the 2013 C-MAX.
10 However, after purchasing the vehicle, he discovered that it consistently achieved gas
11 mileage far below the advertised mileage under normal, real-world use, both on the
12 highway and in the city.

13      84.   Plaintiff Cole did not know when he purchased the vehicle that the 47
14 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
15 efficiency and that the advertised MPG was inaccurate as he reasonably expected that
16 Ford would not falsely advertise MPG.  Plaintiff Cole has been damaged by Ford's
17 false, misleading, and inadequate representations of the C-MAX's fuel economy in
18 that he would not have purchased the vehicle or not paid as much for it, in higher out-
19 of-pocket fuel expenses and the diminution of value of the vehicle.

20       **2.   Richard Weglarz**

21      85.   Plaintiff Richard Weglarz is a resident and citizen of Antioch, Illinois.
22 Plaintiff Weglarz purchased a 2013 Fusion on or about November 2012, at Kunes
23 County Ford in Antioch, Illinois.  He made his decision to purchase a Fusion after
24 researching, viewing, and relying on Ford's website advertisements and marketing
25 materials that stated the Fusion achieved 47 MPG highway, city, and combined.  Fuel
26 efficiency was the primary basis for his decision to purchase a Fusion.

27      86.   Based on these representations which informed that the Fusion would
28 achieve 47 MPG in all types of driving, Plaintiff Weglarz reasonably believed that the

- 24 -

832029_1

1    Fusion would actually achieve 47 MPG when driven in the real world.  Plaintiff
2    Weglarz heavily relied on these representations when he decided to buy the 2013
3    Fusion.  However, after purchasing the vehicle, he discovered that it consistently
4    achieved gas mileage far below the advertised mileage under normal, real-world use,
5    both on the highway and in the city.

6        87.    Plaintiff Weglarz did not know when he purchased the vehicle that the 47
7    MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel
8    efficiency and that the advertised MPG was inaccurate as he reasonably expected that
9    Ford would not falsely advertise MPG.  Plaintiff Weglarz has been damaged by Ford's
10   false, misleading, and inadequate representations of the Fusion's fuel efficiency in that
11   he would not have purchased the vehicle or not paid as much for it, in higher out-of-
12   pocket fuel expenses and the diminution of value of the vehicle.

13       **H.    Maryland Plaintiff: Raymond Belden**

14       88.    Plaintiff Raymond Belden is a resident and citizen of Odenton, Maryland.
15   Plaintiff Belden purchased a 2013 C-MAX on or about January 2012, at Koons Ford
16   in Silver Spring, Maryland.  He made his decision to purchase a C-MAX after
17   researching, viewing, and relying on Ford's website, radio, television, and brochure
18   advertisements and marketing materials that stated the C-MAX achieved 47 MPG
19   highway, city, and combined.  Fuel efficiency was the primary basis for his decision
20   to purchase a C-MAX.

21       89.    Based on these representations which informed that the C-MAX would
22   achieve 47 MPG in all types of driving, Plaintiff Belden reasonably believed that the
23   C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
24   Belden heavily relied on these representations when he decided to buy the 2013 C-
25   MAX.  However, after purchasing the vehicle, he discovered that it consistently
26   achieved gas mileage far below the advertised mileage under normal, real-world use,
27   both on the highway and in the city.

28

- 25 -

832029_1

90.     Plaintiff Belden did not know when he purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as he reasonably expected that Ford would not falsely advertise MPG. Plaintiff Belden has been damaged by Ford's false, misleading, and inadequate representations of the C-MAX's fuel economy in that he would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

**I.      Michigan**

      **1.     Gary Zack**

91.     Plaintiff Gary Zack is a resident and citizen of Rochester Hills, Michigan. Plaintiff Zack purchased a 2013 C-MAX on or about September 2012, at Huntington Ford in Rochester Hills, Michigan. He made his decision to purchase a C-MAX after researching, viewing, and relying on Ford's website and television advertisements and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and combined. Fuel efficiency was the primary basis for his decision to purchase a C-MAX as he has a long commute from the Detroit area to western Michigan, and rising fuel costs were of great concern to him.

92.     Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, Plaintiff Zack reasonably believed that the C-MAX would actually achieve 47 MPG when driven in the real world. Plaintiff Zack heavily relied on these representations when he decided to buy the 2013 C-MAX. However, after purchasing the vehicle, he discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city. After driving several thousand miles, his C-MAX continues to achieve substandard MPG rates.

93.     Plaintiff Zack did not know when he purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as he reasonably expected that

- 26 -

1   Ford would not falsely advertise MPG.  Plaintiff Zack has been damaged by Ford's

2   false, misleading, and inadequate representations of the C-MAX's fuel economy in

3   that he would not have purchased the vehicle or not paid as much for it, in higher out-

4   of-pocket fuel expenses and the diminution of value of the vehicle.

5                 **2.     Steven Yamin**

6        94.    Plaintiff Steven Yamin is a resident and citizen of Lake City, Michigan.

7   Plaintiff Yamin purchased a 2013 Fusion on or about October 2012, at Mike Doran

8   Ford in Charter Township of Clinton, Michigan.  He made his decision to purchase a

9   Fusion after researching, viewing, and relying on Ford's website and television

10  advertisements and marketing materials that stated the Fusion achieved 47 MPG

11  highway, city, and combined.  Fuel efficiency was the primary basis for his decision

12  to purchase a Fusion.  Plaintiff Yamin traded in a Toyota Prius to purchase the Fusion

13  based on Ford's higher fuel efficiency representations.  However, his Fusion actually

14  achieves significantly poorer fuel efficiency than his Prius.

15       95.    Based on Ford's representations which informed that the Fusion would

16  achieve 47 MPG in all types of driving, Plaintiff Yamin reasonably believed that the

17  Fusion would actually achieve 47 MPG when driven in the real world.  Plaintiff

18  Yamin heavily relied on these representations when he decided to buy the 2013

19  Fusion.  However, after purchasing the vehicle, he discovered that it consistently

20  achieved gas mileage far below the advertised mileage under normal, real-world use,

21  both on the highway and in the city.

22       96.    Plaintiff Yamin did not know when he purchased the vehicle that the 47

23  MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

24  efficiency and that the advertised MPG was inaccurate as he reasonably expected that

25  Ford would not falsely advertise MPG.  Plaintiff Yamin has been damaged by Ford's

26  false, misleading, and inadequate representations of the Fusion's fuel efficiency in that

27  he would not have purchased the vehicle or not paid as much for it, in higher out-of-

28  pocket fuel expenses and the diminution of value of the vehicle.

832029_1

1      **J.**    **Minnesota:**

2         **1.**    **Roger Ritten**

3       97.    Plaintiff Roger Ritten is a resident and citizen of Victoria, Minnesota.

4 Plaintiff Ritten purchased a 2013 C-MAX on December 30, 2012, at Metropolitan

5 Ford in Eden Prairie, Minnesota.  He made his decision to purchase a C-MAX after

6 researching, viewing, and relying on Ford's website and television advertisements and

7 marketing materials that stated the C-MAX achieved 47 MPG highway, city, and

8 combined.  Fuel efficiency was the primary basis for his decision to purchase a C-

9 MAX.

10       98.    Based on these representations which informed that the C-MAX would

11 achieve 47 MPG in all types of driving, Plaintiff Ritten reasonably believed that the

12 C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

13 Ritten heavily relied on these representations when he decided to buy the 2013 C-

14 MAX.  However, after purchasing the vehicle, he discovered that it consistently

15 achieved gas mileage far below the advertised mileage under normal, real-world use,

16 both on the highway and in the city.

17       99.    Plaintiff Ritten did not know when he purchased the vehicle that the 47

18 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

19 efficiency and that the advertised MPG was inaccurate as he reasonably expected that

20 Ford would not falsely advertise MPG.  Plaintiff Ritten has been damaged by Ford's

21 false, misleading, and inadequate representations of the C-MAX's fuel economy in

22 that he would not have purchased the vehicle or not paid as much for it, in higher out-

23 of-pocket fuel expenses and the diminution of value of the vehicle.

24         **2.**    **Dean Majkrzak**

25      100.   Plaintiff Dean Majkrzak is a resident and citizen of Elk River, Minnesota.

26 Plaintiff Majkrzak purchased a 2013 Fusion on or about January 11, 2013, at New

27 Brighton Ford in New Brighton, Minnesota.  He made his decision to purchase a

28 Fusion after researching, viewing, and relying on Ford's website, television, and

832029_1

1    brochure advertisements and marketing materials that stated the Fusion achieved 47

2    MPG highway, city, and combined.  Fuel efficiency was the primary basis for his

3    decision to purchase a Fusion.

4        101.   Based on these representations which informed that the Fusion Hybrid

5    would achieve 47 MPG in all types of driving, Plaintiff Majkrzak reasonably believed

6    that the Fusion would actually achieve 47 MPG when driven in the real world.

7    Plaintiff Majkrzak heavily relied on these representations when he decided to buy the

8    2013 Fusion.  However, after purchasing the vehicle, he discovered that it consistently

9    achieved gas mileage far below the advertised mileage under normal, real-world use,

10   both on the highway and in the city.

11       102.   Plaintiff Majkrzak did not know when he purchased the vehicle that the

12   47 MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

13   efficiency and that the advertised MPG was inaccurate as he reasonably expected that

14   Ford would not falsely advertise MPG.  Plaintiff Majkrzak has been damaged by

15   Ford's false, misleading, and inadequate representations of the Fusion's fuel

16   efficiency in that he would not have purchased the vehicle or not paid as much for it,

17   in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

18       **K.     Missouri Plaintiffs: Jeremie Kahler and Amber Kahler**

19       103.   Plaintiffs Jeremie Kahler and Amber Kahler are residents and citizens of

20   Kansas City, Missouri.  The Kahler Plaintiffs purchased a 2013 C-MAX on or about

21   January 2013, at Thoroughbred Ford in Kansas City, Missouri.  They made their

22   decision to purchase a C-MAX after researching, viewing, and relying on Ford's

23   website, television, and brochure advertisements and marketing materials that stated

24   the C-MAX achieved 47 MPG highway, city, and combined.  Fuel efficiency was the

25   primary basis for their decision to purchase a C-MAX.  They also considered

26   purchasing a Toyota Prius, but chose the C-MAX because of Ford's fuel efficiency

27   representations in its advertisements.

28

832029_1

104.   Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, the Kahler Plaintiffs reasonably believed that the C-MAX would actually achieve 47 MPG when driven in the real world.   The Kahler Plaintiffs heavily relied on these representations when they decided to buy the 2013 C-MAX.   However, after purchasing the vehicle, they discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city.

105.   The Kahler Plaintiffs did not know when they purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as they reasonably expected that Ford would not falsely advertise MPG.  The Kahler Plaintiffs have been damaged by Ford's false, misleading, and inadequate representations of the C-MAX's fuel economy in that they would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

**L.     New Jersey Plaintiff: Peter Patroni**

106.   Plaintiff Peter Patroni is a resident and citizen of Galloway, New Jersey. Plaintiff Patroni purchased a 2013 C-MAX on October 25, 2012, at Chapman Ford in Egg Harbor Township, New Jersey.  He made his decision to purchase a Ford C-MAX after researching, viewing, and relying on Ford's website, television, and brochure advertisements and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and combined.  Fuel efficiency was the primary basis for his decision to purchase a C-MAX.

107.   Based on these representations which informed that the C-MAX Hybrid would achieve 47 MPG in all types of driving, Plaintiff Patroni reasonably believed that the C-MAX Hybrid would actually achieve 47 MPG when driven in the real world.  Plaintiff Patroni heavily relied on these representations when he decided to buy the 2013 C-MAX.  However, after purchasing the vehicle, he discovered that it

832029_1

1    consistently achieved gas mileage far below the advertised mileage under normal,

2    real-world use, both on the highway and in the city.

3          108.   Plaintiff Patroni did not know when he purchased the vehicle that the 47

4    MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

5    efficiency and that the advertised mpg was inaccurate as he reasonably expected that

6    Ford would not falsely advertise MPG.  Plaintiff Patroni has been damaged by Ford's

7    false, misleading, and inadequate representations of the C-MAX's fuel economy in

8    that he would not have purchased the vehicle or not paid as much for it, in higher out-

9    of-pocket fuel expenses and the diminution of value of the vehicle.

10         **M.    New York**

11                **1.    Octavio Hoyos**

12         109.   Plaintiff Octavio Hoyos is a resident and citizen of Howard Beach, New

13   York.  Plaintiff Hoyos purchased a 2013 C-MAX Hybrid on or about December 4,

14   2012, at Bay Ridge Ford in Brooklyn, New York.  He made his decision to purchase a

15   C-MAX after researching, viewing, and relying on Ford's website and brochure

16   advertisements and marketing materials that stated the C-MAX achieved 47 MPG

17   highway, city, and combined.  Fuel efficiency was the primary basis for his decision

18   to purchase a C-MAX.  Plaintiff Hoyos considered purchasing a Toyota Prius, but

19   chose the Ford vehicle because of Ford's representations about the C-MAX's fuel

20   economy.

21         110.   Based on these representations which informed that the C-MAX would

22   achieve 47 MPG in all types of driving, Plaintiff Hoyos reasonably believed that the

23   C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

24   Hoyos heavily relied on these representations when he decided to buy the 2013 C-

25   MAX.  However, after purchasing the vehicle, he discovered that it consistently

26   achieved gas mileage far below the advertised mileage under normal, real-world use,

27   both on the highway and in the city.

28

832029_1

1    111.   Plaintiff Hoyos did not know when he purchased the vehicle that the 47
2    MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
3    efficiency and that the advertised MPG was inaccurate as he reasonably expected that
4    Ford would not falsely advertise MPG. Plaintiff Hoyos has been damaged by Ford's
5    false, misleading, and inadequate representations of the C-MAX's fuel economy in
6    that he would not have purchased the vehicle or not paid as much for it, in higher out-
7    of-pocket fuel expenses and the diminution of value of the vehicle.

8                    **2.      Lawrence Moss**

9    112.   Plaintiff Lawrence Moss is a resident and citizen of Guilderland, New
10   York. Plaintiff Moss purchased a 2013 Fusion Hybrid on or about January 26, 2013,
11   at Latham Ford in Latham, New York. He made his decision to purchase a Fusion
12   Hybrid after researching, viewing, and relying on Ford's website, television, and
13   brochure advertisements and marketing materials that stated the Fusion achieved 47
14   MPG highway, city, and combined. Fuel efficiency was the primary basis for his
15   decision to purchase a Fusion. Prior to purchasing his Fusion, Plaintiff Moss drove a
16   2007 Toyota Prius for 4-½ years and chose to purchase the Ford vehicle because of its
17   fuel efficiency representations.

18   113.   Based on these representations which informed that the Fusion Hybrid
19   would achieve 47 MPG in all types of driving, Plaintiff Moss reasonably believed that
20   the Fusion Hybrid would actually achieve 47 MPG when driven in the real world.
21   Plaintiff Moss heavily relied on these representations when he decided to buy the
22   2013 Fusion. However, after purchasing the vehicle, he discovered that it consistently
23   achieved gas mileage far below the advertised mileage under normal, real-world use,
24   both on the highway and in the city.

25   114.   Plaintiff Moss did not know when he purchased the vehicle that the 47
26   MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel
27   efficiency and that the advertised MPG was inaccurate as he reasonably expected that
28   Ford would not falsely advertise MPG. Plaintiff Moss has been damaged by Ford's

- 32 -

1   false, misleading, and inadequate representations of the Fusion's fuel efficiency in that

2   he would not have purchased the vehicle or not paid as much for it, in higher out-of-

3   pocket fuel expenses and the diminution of value of the vehicle.

4      **N.   North Carolina Plaintiff: Burneta Barley**

5      115.   Plaintiff Burneta Barley is a resident and citizen of Mount Holly, North

6   Carolina.   Plaintiff Barley purchased a 2013 Fusion on December 17, 2012 at

7   Crossroads Ford in Wake Forest, North Carolina.   She made her decision to purchase

8   a Fusion after researching, viewing, and relying on Ford's website, television, and

9   brochure advertisements and marketing materials that stated the Fusion achieved 47

10  MPG highway, city, and combined.   Fuel efficiency was the primary basis for her

11  decision to purchase a Fusion.

12     116.   Based on these representations which informed that the Fusion would

13  achieve 47 MPG in all types of driving, Plaintiff Barley reasonably believed that the

14  Fusion would actually achieve 47 MPG when driven in the real world.   Plaintiff

15  Barley heavily relied on these representations when she decided to buy the 2013

16  Fusion.   However, after purchasing the vehicle, she discovered that it consistently

17  achieved gas mileage far below the advertised mileage under normal, real-world use,

18  both on the highway and in the city.

19     117.   Plaintiff Barley did not know when she purchased the vehicle that the 47

20  MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

21  efficiency and that the advertised MPG was inaccurate as she reasonably expected that

22  Ford would not falsely advertise MPG.   Plaintiff Barley has been damaged by Ford's

23  false, misleading, and inadequate representations of the Fusion's fuel efficiency in that

24  she would not have purchased the vehicle or not paid as much for it, in higher out-of-

25  pocket fuel expenses and the diminution of value of the vehicle.

26

27

28

832029_1

- 33 -

1    **O.    Ohio**

2         **1.    Phillip Rider**

3         118.    Plaintiff Phillip Rider is a resident and citizen of Marysville, Ohio.

4    Plaintiff Rider purchased a 2013 C-MAX on January 20, 2013, at Bob Chapman Ford

5    in Marysville, Ohio.   He made his decision to purchase a Ford C-MAX after

6    researching, viewing, and relying on Ford's website advertisements and marketing

7    materials that stated the C-MAX achieved 47 MPG highway, city, and combined.

8    Fuel efficiency was the primary basis for his decision to purchase a C-MAX.

9         119.    Based on these representations which informed that the C-MAX would

10   achieve 47 MPG in all types of driving, Plaintiff Rider reasonably believed that the C-

11   MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff Rider

12   heavily relied on these representations when he decided to buy the 2013 C-MAX.

13   However, after purchasing the vehicle, he discovered that it consistently achieved gas

14   mileage far below the advertised mileage under normal, real-world use, both on the

15   highway and in the city.

16        120.    Plaintiff Rider did not know when he purchased the vehicle that the 47

17   MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

18   efficiency and that the advertised MPG was inaccurate as he reasonably expected that

19   Ford would not falsely advertise MPG.  Plaintiff Rider has been damaged by Ford's

20   false, misleading, and inadequate representations of the C-MAX's fuel economy in

21   that he would not have purchased the vehicle or not paid as much for it, in higher out-

22   of-pocket fuel expenses and the diminution of value of the vehicle.

23        **2.    Sylvester Lazuka and Patricia Lazuka**

24        121.    Plaintiffs Sylvester Lazuka and Patricia Lazuka are residents and citizens

25   of Kirtland, Ohio.   The Lazuka Plaintiffs purchased a 2013 Fusion on or about

26   December, 2012, at Classic Ford in Mentor, Ohio.  They made their decision to

27   purchase a Fusion after researching, viewing, and relying on Ford's website and

28   brochure advertisements and marketing materials that stated the Fusion achieved 47

- 34 -

832029_1

1  MPG highway, city, and combined.  Fuel efficiency was the primary basis for their

2  decision to purchase a Fusion.

3      122.   Based on these representations which informed that the Fusion would

4  achieve 47 MPG in all types of driving, the Lazuka Plaintiffs reasonably believed that

5  the Fusion would actually achieve 47 MPG when driven in the real world.  The

6  Lazuka Plaintiffs heavily relied on these representations when they decided to buy the

7  2013 Fusion.   However, after purchasing the vehicle, they discovered that it

8  consistently achieved gas mileage far below the advertised mileage under normal,

9  real-world use, both on the highway and in the city.

10      123.   The Lazuka Plaintiffs did not know when they purchased the vehicle that

11  the 47 MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

12  efficiency and that the advertised MPG was inaccurate as they reasonably expected

13  that Ford would not falsely advertise MPG. The Lazuka Plaintiffs have been damaged

14  by Ford's false, misleading, and inadequate representations of the Fusion's fuel

15  efficiency in that they would not have purchased the vehicle or not paid as much for it,

16  in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

17      **P.    Oregon Plaintiff: Mark Goodale**

18      124.   Plaintiff Mark Goodale is a resident and citizen of Beaverton, Oregon.

19  Plaintiff Goodale purchased a 2013 Fusion on or about January 2, 2013, at Landmark

20  Ford in Tigard, Oregon.  He made his decision to purchase a Fusion after researching,

21  viewing, and relying on Ford's website and television advertisements and marketing

22  materials that stated the Fusion achieved 47 MPG highway, city, and combined.  Fuel

23  efficiency was the primary basis for his decision to purchase a Fusion.

24      125.   Based on these representations which informed that the Fusion Hybrid

25  would achieve 47 MPG in all types of driving, Plaintiff Goodale reasonably believed

26  that the Fusion would actually achieve 47 MPG when driven in the real world.

27  Plaintiff Goodale heavily relied on these representations when he decided to buy the

28  2013 Fusion.  However, after purchasing the vehicle, he discovered that it consistently

- 35 -

832029_1

1   achieved gas mileage far below the advertised mileage under normal, real-world use,

2   both on the highway and in the city.

3        126.   Plaintiff Goodale did not know when he purchased the vehicle that the 47

4   MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

5   efficiency and that the advertised MPG was inaccurate as he reasonably expected that

6   Ford would not falsely advertise MPG.  Plaintiff Goodale has been damaged by Ford's

7   false, misleading, and inadequate representations of the Fusion's fuel efficiency in that

8   he would not have purchased the vehicle or not paid as much for it, in higher out-of-

9   pocket fuel expenses and the diminution of value of the vehicle.

10       **Q.    Pennsylvania Plaintiff: Gary Druckenmiller**

11       127.   Plaintiff Gary Druckenmiller is a resident and citizen of Lewistown,

12  Pennsylvania.   Plaintiff Druckenmiller purchased a 2013 Fusion on or about

13  December 2012, at State College Ford in State College, Pennsylvania.  He made his

14  decision to purchase a Fusion after researching, viewing, and relying on Ford's

15  website and television advertisements and marketing materials that stated the Fusion

16  achieved 47 MPG highway, city, and combined.  Fuel efficiency was the primary

17  basis for his decision to purchase a Fusion, due to the fact that Plaintiff Druckenmiller

18  had recently retired, his wife was preparing to retire, they had plans to do a lot of

19  traveling, and they were looking for a new vehicle that would save money on gas.

20       128.   Based on Ford's representations which informed that the Fusion would

21  achieve 47 MPG in all types of driving, Plaintiff Druckenmiller reasonably believed

22  that the Fusion would actually achieve 47 MPG when driven in the real world.

23  Plaintiff Druckenmiller heavily relied on these representations when he decided to buy

24  the 2013 Fusion.   However, after purchasing the vehicle, he discovered that it

25  consistently achieved gas mileage far below the advertised mileage under normal,

26  real-world use, both on the highway and in the city.

27       129.   Plaintiff Druckenmiller did not know when he purchased the vehicle that

28  the 47 MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel

832029_1

efficiency and that the advertised MPG was inaccurate as he reasonably expected that Ford would not falsely advertise MPG. Plaintiff Druckenmiller has been damaged by Ford's false, misleading, and inadequate representations of the Fusion's fuel efficiency in that he would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

**R.     South Carolina Plaintiffs: Stanley Lindsey and Elizabeth Lindsey**

130.    Plaintiffs Stanley Lindsey and Elizabeth Lindsey are residents and citizens of Bluffton, South Carolina. The Lindsey Plaintiffs purchased a 2013 C-MAX on or about January 2013, at O.C. Welch Ford in Hardeeville, South Carolina. They made their decision to purchase a C-MAX after researching, viewing, and relying on Ford's website, television, and brochure advertisements and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and combined. Fuel efficiency was the primary basis for their decision to purchase a C-MAX.

131.    Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, the Lindsey Plaintiffs reasonably believed that the C-MAX Hybrid would actually achieve 47 MPG when driven in the real world. The Lindsey Plaintiffs heavily relied on these representations when they decided to buy the 2013 C-MAX. However, after purchasing the vehicle, they discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city.

132.    The Lindsey Plaintiffs did not know when they purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised MPG was inaccurate as they reasonably expected that Ford would not falsely advertise MPG. The Lindsey Plaintiffs have been damaged by Ford's false, misleading, and inadequate representations of the C-MAX's fuel economy in that they would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

- 37 -

832029_1

**S.     Texas**

       **1.     Keith Howe**

133.   Plaintiff Keith Howe is a resident and citizen of Boerne, Texas. Plaintiff Howe purchased a 2013 C-MAX on or about December 22, 2012, at Legacy Ford in Rosenberg, Texas.  He made his decision to purchase a C-MAX after researching, viewing, and relying on Ford's website, television, brochure, and banner advertisements and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and combined.  Fuel efficiency was the primary basis for his decision to purchase a C-MAX.  Plaintiff Howe originally considered purchasing the Toyota Prius, but chose the C-MAX because of Ford's fuel efficiency advertisements.

134.   Based on these representations which informed that the C-MAX would achieve 47 MPG in all types of driving, Plaintiff Howe reasonably believed that the C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff Howe heavily relied on these representations when he decided to buy the 2013 C-MAX.  However, after purchasing the vehicle, he discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city.

135.   Plaintiff Howe did not know when he purchased the vehicle that the 47 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel efficiency and that the advertised mpg was inaccurate as he reasonably expected that Ford would not falsely advertise MPG.  Plaintiff Howe has been damaged by Ford's false, misleading, and inadequate representations of the C-MAX's fuel economy in that he would not have purchased the vehicle or not paid as much for it, in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

       **2.     Melissa Schmidt**

136.   Plaintiff Melissa Schmidt is a resident and citizen of Kingwood, Texas. Plaintiff Schmidt purchased a 2013 Fusion on or about November 2012, at Planet Ford 59 in Humble, Texas.  She made her decision to purchase a Fusion after researching,

- 38 -

1   viewing, and relying on Ford's website advertisements and marketing materials that
2   stated the Fusion achieved 47 MPG highway, city, and combined.  Fuel efficiency was
3   the primary basis for her decision to purchase a Fusion.

4       137.  Based on these representations which informed that the Fusion would
5   achieve 47 MPG in all types of driving, Plaintiff Schmidt reasonably believed that the
6   Fusion would actually achieve 47 MPG when driven in the real world.  Plaintiff
7   Schmidt heavily relied on these representations when she decided to buy the 2013
8   Fusion.  However, after purchasing the vehicle, she discovered that it consistently
9   achieved gas mileage far below the advertised mileage under normal, real-world use,
10  both on the highway and in the city.

11      138.  Plaintiff Schmidt did not know when she purchased the vehicle that the
12  47 MPG estimated mileage for the Fusion overstated the vehicle's estimated fuel
13  efficiency and that the advertised MPG was inaccurate as she reasonably expected that
14  Ford would not falsely advertise MPG.  Plaintiff Schmidt has been damaged by Ford's
15  false, misleading, and inadequate representations of the Fusion's fuel efficiency in that
16  she would not have purchased the vehicle or not paid as much for it, in higher out-of-
17  pocket fuel expenses and the diminution of value of the vehicle.

18      **T.**    **Virginia Plaintiff: Charles Savage**

19      139.  Plaintiff Charles Savage is a resident and citizen of the county of
20  Arlington, Virginia.  Plaintiff Savage purchased a 2013 C-MAX on or about
21  November 2012, at Lindsey Ford of Wheaton in Wheaton, Maryland.  He made his
22  decision to purchase a C-MAX after researching, viewing, and relying on Ford's
23  website and television advertisements and marketing materials that stated the C-MAX
24  achieved 47 MPG highway, city, and combined, including YouTube advertisements
25  that the C-MAX achieves better fuel efficiency than the Toyota Prius.  Fuel efficiency
26  was the primary basis for his decision to purchase a C-MAX.

27      140.  Based on these representations which informed that the C-MAX would
28  achieve 47 MPG in all types of driving, Plaintiff Savage reasonably believed that the

- 39 -

832029_1

1    C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
2    Savage heavily relied on these representations when he decided to buy the 2013 C-
3    MAX.  However, after purchasing the vehicle, he discovered that it consistently
4    achieved gas mileage far below the advertised mileage under normal, real-world use,
5    both on the highway and in the city.

6        141.   Plaintiff Savage did not know when he purchased the vehicle that the 47
7    MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel
8    efficiency and that the advertised mpg was inaccurate as he reasonably expected that
9    Ford would not falsely advertise MPG.  Plaintiff Savage has been damaged by Ford's
10   false, misleading, and inadequate representations of the C-MAX's fuel economy in
11   that he would not have purchased the vehicle or not paid as much for it, in higher out-
12   of-pocket fuel expenses and the diminution of value of the vehicle.

13       **U.    Washington**
14           **1.    Allen Bluhm**

15       142.   Plaintiff Allen Bluhm is a resident and citizen of Tumwater, Washington.
16   Plaintiff Bluhm purchased a 2013 C-MAX on or about November 2012, at Allstar
17   Ford in Olympia, Washington.  He made his decision to purchase a C-MAX after
18   researching, viewing, and relying on Ford's website and television advertisements and
19   marketing materials that stated the C-MAX  achieved 47 MPG highway, city, and
20   combined.  Fuel efficiency was the primary basis for his decision to purchase a C-
21   MAX.

22       143.   Based on Ford's representations which informed that the C-MAX would
23   achieve 47 MPG in all types of driving, Plaintiff Bluhm reasonably believed that the
24   C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff
25   Bluhm heavily relied on these representations when he decided to buy the 2013 C-
26   MAX.  However, after purchasing the vehicle, he discovered that it consistently
27   achieved gas mileage far below the advertised mileage under normal, real-world use,
28   both on the highway and in the city.

- 40 -

1    144.   Plaintiff Bluhm did not know when he purchased the vehicle that the 47

2    MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

3    efficiency and that the advertised MPG was inaccurate as he reasonably expected that

4    Ford would not falsely advertise MPG. Plaintiff Bluhm has been damaged by Ford's

5    false, misleading, and inadequate representations of the C-MAX's fuel economy in

6    that he would not have purchased the vehicle or not paid as much for it, in higher out-

7    of-pocket fuel expenses and the diminution of value of the vehicle.

8            **2.    Richard Fox**

9    145.   Plaintiff Richard Fox is a resident and citizen of Ridgefield, Washington.

10   Plaintiff Fox purchased a 2013 Ford Fusion Hybrid on or about November 16, 2012,

11   at I5 Ford aka Uhlmann Ford in Chehalis, Washington.  He made his decision to

12   purchase a Ford Fusion Hybrid after researching, viewing, and relying on Ford's

13   website, brochure, and "My Ford" magazine advertisements and marketing materials

14   that stated the Fusion achieved 47 MPG highway, city, and combined.  Fuel efficiency

15   was the primary basis for his decision to purchase a Fusion.

16   146.   Based on Ford's representations which informed that the Fusion would

17   achieve 47 MPG in all types of driving, Plaintiff Fox reasonably believed that the

18   Fusion Hybrid would actually achieve 47 MPG when driven in the real world.

19   Plaintiff Fox heavily relied on these representations when he decided to buy the 2013

20   Fusion.  However, after purchasing the vehicle, he discovered that it consistently

21   achieved gas mileage far below the advertised mileage under normal, real-world use,

22   both on the highway and in the city.

23   147.   Plaintiff Fox did not know when he purchased the vehicle that the 47

24   MPG EPA estimated mileage for the Fusion Hybrid overstated the vehicle's estimated

25   fuel efficiency and that the advertised mpg was inaccurate as he reasonably expected

26   that Ford would not falsely advertise MPG.  Plaintiff Fox has been damaged from

27   Ford's  false,  misleading,  and  inadequate  representations  of  the  Fusion's  fuel

28

- 41 -

1 efficiency in that he would not have purchased the vehicle or not paid as much for it,

2 in higher out-of-pocket fuel expenses and the diminution of value of the vehicle.

3       **V.     Wisconsin Plaintiff: Dennis Harkins**

4       148.   Plaintiff Dennis Harkins is a resident and citizen of Fitchburg,

5 Wisconsin.  Plaintiff Harkins purchased a 2013 C-MAX on November 19, 2012, at

6 Kayser Ford in Madison, Wisconsin.  He made his decision to purchase a C-MAX

7 after researching, viewing, and relying on Ford's website and brochure advertisements

8 and marketing materials that stated the C-MAX achieved 47 MPG highway, city, and

9 combined.  Fuel efficiency was the primary basis for his decision to purchase a C-

10 MAX.

11      149.   Based on these representations which informed that the C-MAX would

12 achieve 47 MPG in all types of driving, Plaintiff Harkins reasonably believed that the

13 C-MAX would actually achieve 47 MPG when driven in the real world.  Plaintiff

14 Harkins heavily relied on these representations when he decided to buy the 2013 C-

15 MAX.  However, after purchasing the vehicle, he discovered that it consistently

16 achieved gas mileage far below the advertised mileage under normal, real-world use,

17 both on the highway and in the city.

18      150.   Plaintiff Harkins did not know when he purchased the vehicle that the 47

19 MPG estimated mileage for the C-MAX overstated the vehicle's estimated fuel

20 efficiency and that the advertised MPG was inaccurate as he reasonably expected that

21 Ford would not falsely advertise MPG.  Plaintiff Harkins has been damaged by Ford's

22 false, misleading, and inadequate representations of the C-MAX's fuel economy in

23 that he would not have purchased the vehicle or not paid as much for it, in higher out-

24 of-pocket fuel expenses and the diminution of value of the vehicle.

25      151.   All of the above Plaintiffs would not have purchased their Vehicles or

26 paid as much to purchase their Vehicles if they had known that the MPG rates

27 advertised were substantially inflated.  In addition, they have paid more in out-of-

28 pocket fuel expenses and suffered diminution of the value of their Vehicles.

- 42 -

832029_1

## II.    Defendant Ford Motor Company

152.   Defendant Ford Motor Company is a global automotive industry leader based in Dearborn, Michigan that manufactures automobiles across six continents. Through dealerships, Ford causes its vehicles to be sold in California. It is the second largest U.S.-based automaker, and is the world's fifth largest automobile manufacturer. Ford operates 90 plants around the world and employs over 200,000 employees. Ford distributes its vehicles throughout the United States via Ford dealerships, including in California. Ford also operates a research lab in Silicon Valley, California.[3] Ford is publicly traded on the New York Stock Exchange.

153.   In an attempt to capitalize on strong consumer preference for better fuel economy, Ford launched a "power of choice" strategy to deliver leading fuel economy across its lineup. However, in the process of promoting sales, Ford engaged in a misleading and deceptive advertising campaign throughout California and the United States, which grossly overstated the estimated fuel economy of the Vehicles, which in fact, fall substantially short of attaining such fuel efficiency in real-world, normal use.

154.   The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein, including being responsible for the design, testing, and marketing of the Vehicles. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

155.   Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee

---

[3]     http://corporate.ford.com/news-center/press-releases-detail/pr-fords-new-silicon-valley-36681 (last visited Apr. 15, 2013).

832029_1

1  of each of the other Defendants, and at all times mentioned was acting within the
2  course and scope of said agency and/or employment with the full knowledge,
3  permission, and consent of each of the other Defendants. In addition, each of the acts
4  and/or omissions of each Defendant alleged herein was made known to, and ratified
5  by, each of the other Defendants.

6  **SUBSTANTIVE ALLEGATIONS**

7      **A.**    **Rise in Sales of Fuel-Efficient Vehicles in the United States**

8      156.   It is widely known that some of the hottest cars on the market these days
9  are fuel efficient vehicles that save consumers money at the pump, where they have
10 seen prices soar over the past several years. In fact, *The New York Times* published an
11 article in September 2012, observing: "In the past, nothing slowed down strong car
12 sales faster than a spike in gasoline prices. But these days, consumers simply switch
13 to more fuel-efficient models."[4]

14     157.   Consumers are also increasingly mindful of their carbon footprint in light
15 of popular education concerning climate change. Buying a fuel-efficient car is one of
16 the ways in which consumers are encouraged to make a difference in reducing climate
17 change.

18     158.   In the summer of 2012, media articles reported that Kelley Blue Book
19 ("KBB") had seen "an increased interest in fuel-sipping small cars both in terms of
20 KBB.com shopping activity and retail sales volume."[5] Sales for some fuel-efficient
21 cars were up nearly 50% from a year before.

22
23
24
_____

25 [4]    http://www.nytimes.com/2012/09/05/business/august-us-car-sales.html   (last
26 visited Apr. 12, 2013).

27 [5]    http://business.time.com/2012/08/27/yet-again-high-gas-prices-boost-sales-of-
small-fuel-efficient-cars/ (last visited on Apr. 12, 2013).

28

- 44 -

1    159.   More recently, in October 2012, *The New York Times* reported that

2  automobile sales were at their highest point in four years.[6]  The robust sales pace was

3  driven in part by the "wide variety of new fuel-efficient models on the market."  The

4  article quoted a Ford executive as stating, "'Fuel economy remains one of the most

5  important features customers want today.'"

6    160.   Additionally, a study conducted by *Consumer Reports* revealed that

7  consumers are willing to pay extra for a fuel-efficient vehicle in order to cut driving

8  costs, increase fuel economy, and further environmental protection goals.  In fact,

9  83% of consumers surveyed reported that they would be willing to pay more for a

10  fuel-efficient car.[7]

11    161.   Indeed, in an article published on October 16, 2012, *Forbes* stated that

12  "[w]ith gas prices touching $5 a gallon in some parts of the country, the emphasis on

13  fuel efficiency of vehicles has never been higher."[8]

14   **B.   Defendants Bank on Consumer Interest in Fuel Economy**
     **with Misleading Advertising**

15

16    162.   Consistent with the trends in consumer interest regarding fuel-efficient

17  cars, Ford has attempted to portray its vehicles as fuel efficient.  Through this

18  deceptive advertising campaign, Ford has conveyed these messages to the United

19  States consuming public about the fuel economy of its vehicles.

20    163.   In fact, in a recent press release, Ford admits that fuel economy has

21  become an even more key purchase consideration for consumers and that it is

22  investing billions to research and develop fuel efficient vehicles.[9]

23

24  [6]   http://www.nytimes.com/2012/10/03/business/g-m-and-ford-post-lackluster-sales.html (last visited Apr. 12, 2013).

25  [7]   http://news.consumerreports.org/cars/2011/11/survey-car-owners-want-better-
26  fuel-economy-support-increased-standards.html (last visited Apr. 12, 2013).

27  [8]   http://www.forbes.com/sites/greatspeculations/2012/10/16/how-ford-plans-to-benefit-from-high-gas-prices/ (last visited Apr. 12, 2013).

28

- 45 -

1   164.   The 2010 Fusion was launched in the U.S. market in 2009.   The
2 introduction of the 2010 Fusion was one of Ford's first attempts to compete in
3 growing the hybrid market.   Subsequently, Ford introduced the 2011-2013 Fusion
4 Hybrids.  Ford builds the Fusion Hybrids in Sonora, Mexico.

5   165.   In an attempt to further target the growing market for hybrid vehicles
6 which had been previously dominated by Toyota, Ford introduced the 2013 model
7 year C-MAX and the 2013 Fusion.[10]

8   166.   Alan Mulally, Ford's president and Chief Executive Officer stated, "We
9 are absolutely committed to class-leading fuel efficiency as a reason to buy Ford
10 vehicles, with customers able to choose the fuel-efficient powertrain that best fits their
11 lifestyle."

12   167.   The introduction of the C-MAX and 2013 Fusion in the third quarter of
13 2012 marked the debut of Ford's newest dedicated line of hybrid vehicles.   Ford
14 positioned the vehicles as fuel efficient.   The Company noted that its rationale for
15 launching the C-MAX and 2013 Fusion was that "customers increasingly want to save
16 money at the pump even as gas prices rise over time."

17   168.   Ford touted the 2013 Fusion as "America's most fuel efficient midsize
18 sedan."[11] Additionally, in July and August 2012, Ford boasted that the C-MAX raises
19 the bar for hybrid fuel economy and takes customers further than the Toyota Prius, a
20 popular hybrid model.[12]

21
22 [9]   http://media.ford.com/mini_sites/10031/fueleconomy/ (last visited Apr. 12, 2013).
23 [10]   http://www.forbes.com/sites/greatspeculations/2012/10/16/how-ford-plans-to-
24 benefit-from-high-gas-prices/ (last visited Apr. 12, 2013).
25 [11]   http://media.ford.com/article_display.cfm?article_id=37109 (last visited Apr. 12, 2013).
26 [12]   http://media.ford.com/article_display.cfm?article_id=36932 (last visited Apr.
27 12, 2013); http://media.ford.com/article_display.cfm?article_id=36816 (last visited Apr. 12, 2013).
28

- 46 -

832029_1

1        169.   The first step in Ford's plan to position the C-MAX and the 2013 Fusion

2   as America's most fuel efficient hybrids was to report the Environmental Protection

3   Agency's ("EPA") estimated mileage that was class leading.  Ford did so by reporting

4   to the EPA that the C-MAX and 2013 Fusion achieved EPA-estimated 47 city,

5   highway, and combined MPG figures that just so happened to be better than its chief

6   rival, the Toyota Prius v.  After the 47 MPG figure was enshrined in the EPA fuel

7   economy estimates, Ford used the figure for an extensive ad campaign.

8        170.   For example, in advertisements and press releases, Ford stated that the C-

9   MAX "delivers EPA-certified 47 mpg city, 47 mpg highway ratings – 7 mpg better

10  than the Prius v" and claimed that customers would pay less at the dealership and less

11  at the pump for a C-MAX versus a Prius v.[13]

12       171.   Ford touted that the "C-MAX Hybrid is Ford's first hybrid vehicle to

13  offer 47 mpg across the board."[14]

14       172.   Additionally, Ford stated "C-MAX Hybrid returns the same fuel

15  economy whether driving cross-country or across the city – stemming mostly from a

16  growing list of Ford innovations that have helped the vehicle to deliver an impressive

17  list of metrics, such as its 570-mile overall range, taking customers from Los Angeles

18  to Las Vegas and back on one tank of gas."[15]

19       173.   In the same press release, Ford stated, "C-MAX Hybrid to offer 'real car'

20  range at 570 miles on one tank of gas, taking customers from Los Angeles to Las

21  Vegas and back on one tank, beating Toyota Prius v by 120 miles."[16]

22  _____

23  [13]     http://media.ford.com/article_display.cfm?article_id=37185 (last visited Apr.
24  12, 2013).

25  [14]     http://media.ford.com/article_display.cfm?article_id=36932 (last visited Apr.
    12, 2013).

26  [15]     *Id.*

27  [16]     *Id.*

28

832029_1

1      174.   Additionally, Ford expressly stated in a press release that the "C-MAX

2    Hybrid delivers EPA-certified 47 mpg city, 47 mpg highway ratings – 7 mpg better

3    than Prius on the highway – for a 47 mpg combined rating."

4      175.   In one internet ad, entitled "The Hybrid Games Challenge: MPG

5    Showdown," two actors portray reporters trying to determine whether the C-MAX or

6    Prius v had better MPG.[17] In the ad, the announcers state that the total range of the C-

7    MAX is 571 miles while the Prius' driving range is 450 miles. This information is also

8    displayed graphically on the screen.  The announcer then states, "So the C-MAX

9    should go further on a tank of fuel."  Then, a Prius owner and a C-MAX owner are

10    shown purportedly going about daily errands.  The ad then depicts the Prius owner

11    having to stop for gas before the C-MAX owner, confirming ostensibly the better

12    MPG of the C-MAX.

13      176.   The same theme is used in a cartoon ad.  In that ad, the headline states,

14    "Ford C-MAX vs. Toyota Prius v, How Far on a Tankful?"[18] That ad depicts the Prius

15    stopping at a gas station first, while the C-MAX continues driving.  Then the legend,

16    "C-MAX 571 miles, Prius only 450 Miles,"  appears,  followed by "C-MAX Hybrid

17    Maximizes a Tank of Gas,"  and finally, "Stop Less, Go More".

18      177.   In another ad, "C-MAX Hybrid MPG" a cartoon graphic depicted that the

19    C-MAX beat Prius v in combined MPG.  The ad depicted the Prius v as getting 44

20    MPG combined while C-MAX achieved 47 MPG combined, concluding, "C-MAX

21    Hybrid Maximizes MPG, Stop Less, Go More."[19]

22      178.   Indeed, Ford regularly compared the mileage of the C-MAX to that of the

23    Toyota Prius.  In fact, Ford focused a large part of its fall 2012 C-MAX marketing

24

---

25  [17]    http://www.ford.com/cars/cmax/hybridgames/ (last visited Apr. 8, 2013).

26  [18]    *Id.*

27  [19]    *Id.*

28

832029_1

1  campaign on a comparison of these two vehicles.  Matt VanDyke, director of U.S.

2  Marketing Communications of Ford, described the C-MAX Hybrid ads as "simple,

3  unique spots that will introduce our first all-hybrid line in North America to

4  Americans by . . . showing how it beats Prius v, especially in fuel economy."[20]

5       179.   These comparisons were false and misleading as they created the

6  impression that Plaintiffs would attain better mileage with the C-MAX than they

7  would be able to with a Prius.  However, the Prius actually achieves better MPG than

8  the C-MAX in real-world driving conditions.[21]

9       180.   In one ad comparing the C-MAX to the Prius v, Ford touted that the C-

10 MAX also beats Prius v with better MPG.[22]

11      181.   Ford refers to the C-MAX as "[t]he country's most fuel-efficient and

12 affordable hybrid" and touted that the "C-MAX Hybrid at 47 mpg combined beats

13 Prius v by 7 mpg in the compact hybrid utility segment."[23]

14      182.   In another ad entitled "Say Wheeee," Ford stated that the C-MAX "bests"

15 the Toyota Prius v in MPG, concluding the commercial with the statement: "Say Hi to

16 the all new 47 combined mpg C-MAX Hybrid."  The video component of the ad

17 showed an image of the vehicle with an accompanying "47 mpg" graphic.[24]

18

19 _____

20 [20]     http://media.ford.com/article_display.cfm?article_id=37185%20 (last visited Apr. 12, 2013).

21 [21]     http://news.consumerreports.org/cars/2012/12/video-tests-show-2013-ford-
22 fusion-c-max-hybrids-dont-live-up-to-47-mpg-claims.html (last visited Apr. 12, 2013).

23 [22]     http://media.ford.com/article_display.cfm?article_id=37185 (last visited Apr.
24 12, 2013); http://www.ispot.tv/ad/7IZX/ford-c-max-hybrid-more-space (last visited Apr. 12, 2013).

25 [23]     http://media.ford.com/article_display.cfm?article_id=37358 (last visited Apr.
26 12, 2013).

27 [24]     http://media.ford.com/article_display.cfm?article_id=37185 (last visited Apr.
28 12, 2013).

832029_1

- 49 -